41549. WOODARD et al. v. SMITH et al.
(325 SE2d 377)

Weltner, Justice.

The trial court enjoined Brantley County from continuing a "Saturday Work Program," under which county employees received overtime pay for non-compulsory Saturday work, performed on private property with county equipment and materials. The county had established a list of participants on a first-request basis, and performed grading work on private property at rates established in a published schedule. Details of the program were explained to the citizens of Brantley County in a mailed report. The county maintained open records of its operation. Income exceeded $16,000 by the end of 1982, and all revenues were deposited in the general fund of the county, subject to audit. There is no contention that the rates were unreasonably low, or that the county was providing services in substantial competition with private businesses.

Brantley County contends that the program is authorized by a special constitutional amendment which permitted the county to levy a tax not exceeding one mill for the purpose of creating a fund for agricultural and industrial development. Ga. L. 1953 (Nov.-Dec. Sess.), p. 217. Although no tax was levied, the county insists that the Saturday Work Program is its equivalent. It further contends that where, as here, the county commissioners have acted so as to make profitable use of resources which otherwise would be idled, their discretion should not be disturbed absent fraud or abuse.

The complaining citizens rely upon OCGA § 32-1-8, which declares that it is "unlawful for any official, officer, or employee of . . . any county . . . to authorize the construction or maintenance of any private road." Additionally, they cite an unofficial opinion of the Attorney General to the same effect. 1976 Ops. Att'y Gen. U76-24.

1. In resolving this issue, we have considered four of our cases which arose from related controversies.

In *Town of Decatur v. DeKalb County,* 130 Ga. 483 (61 SE 23) (1908), we voided a purported lease by the county of several acres owned by it and located on "the court-house square," under the theory that approval of the 99-year lease there involved would run afoul of a statutory provision, then in effect, which authorized only the disposition of public property "which had become unserviceable." 130

Ga. at 488.

In *Black v. County of Forsyth*, 193 Ga. 571 (19 SE2d 297) (1942), we approved the leasing of county property for operation as a service station, on the determination by the ordinary that "the property can not be used advantageously by the county in the exercise of its public functions." 193 Ga. at 574.

In *Smith v. Bd. of Commrs.*, 244 Ga. 133 (259 SE2d 74) (1979), we approved a contract entered into by county authorities with a private company which was to provide fire protection services. The contract included the leasing of fire stations and fire fighting equipment owned by the county. This agreement was attacked on the theory that it violated the responsibility of the county commissioners to maintain control over county property. We said: "The Commissioners clearly do have the duty to maintain *control* over County property, but this duty co-exists with the duty to exercise that control in the manner they deem most beneficial to the County. See generally *Black v. County of Forsyth*, [supra]; compare *Decatur v. DeKalb County*, [supra]." 244 Ga. at 139.

In *Wheeler v. DeKalb County*, 249 Ga. 678 (292 SE2d 855) (1982), we approved the transfer by the county of juvenile facilities (constructed with proceeds of a bond issue which was approved specifically for that purpose) to the sheriff's department, for a use inconsistent with that stated in the bond issue. We held: "The board of commissioners, as the governing authority of DeKalb County, has the duty to maintain and exercise control over county property, and this duty co-exists with the duty to exercise that control for the benefit of the county." 249 Ga. at 683.

Considering these authorities, it becomes clear that absent fraud or abuse, county authorities have a wide latitude in the exercise of control over public property, so long as that control is exercised for the benefit of the county.

The authorities we have cited involve real property, while the case before us concerns personal property and services. Nonetheless, we discern no logical distinction between the two, nor any basis for declaring the Saturday Work Program to be beyond the powers of the governing authority.

We construe OCGA § 32-1-8, relied upon by the complainants, to proscribe the bestowing of gratuities from the public treasury — not to prohibit contracts under which a county receives payments for services.

2. The question of whether a county lawfully may engage in substantial competition with private businesses is not before us. See *Beazley v. DeKalb County*, 210 Ga. 41, 48 (77 SE2d 740) (1953).

3. The question of whether the program represents sound or desirable public policy is addressed to the voters of Brantley County.

*Beall v. Beall*, 8 Ga. 210, 228 (25) (1850).

Accordingly, the judgment of the trial court is reversed.

*Judgment reversed. All the Justices concur, except Bell, J., who dissents.*

DECIDED FEBRUARY 8, 1985 —
REHEARING DENIED FEBRUARY 26, 1985.

*Hopkins & Strickland, C. Deen Strickland,* for appellants.
*Stanley Smith,* for appellees.