S92A0749. DICKEY et al. v. STOREY et al.
(423 SE2d 650)

CLARKE, Chief Justice.

In November 1987, an advisory committee was jointly appointed by the Floyd County Board of Commissioners (Board) and the City of Rome Commissioners to study the needs of the community, and to explore the possibilities of raising capital for these projects by imposition of a Special Purpose Local Option Sales Tax (SPLOST) as authorized by OCGA § 48-8-110 et seq. Public hearings were held and the SPLOST Committee issued a report which called for, inter alia, the construction of a softball complex to replace existing softball fields in the West Rome area, and a multi-story governmental office and civic center which would provide a "centerpiece for the downtown river front area."[1] The SPLOST Report designated this governmental complex "the Forum." In June 1988, the Floyd County Board of Commissioners passed a resolution calling for a referendum on the imposition of a SPLOST and at the same time adopted the report of

---

color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws. . . ."

[1] The SPLOST Report did not recommend a specific site on which these structures should be built.

the SPLOST Committee. The Board then selected a site for the Forum on the banks of the Oostanaula River in downtown Rome. Drawings of the proposed Forum were made and presented to the public. In August 1988, Floyd County held a referendum on the resolution which asked voters to determine whether a local option sales tax should be imposed for the purposes of, inter alia, "recreational facilities and multi-purpose governmental facilities." A majority of voters approved the tax which is to be imposed for no longer than four calendar years.

The Board then began the task of acquiring the site property along the Oostanaula River. Some parcels of property were purchased; other parcels were condemned in actions that proceeded to litigation. The Board hired architects to draw plans for building the Forum which would encompass a governmental office complex and civic center connected by a plaza with shared utilities and parking. The Board paid for electrical, acoustical, security and engineering consulting services. In cooperation with this project, the City of Rome relocated sewers, closed streets and sold or otherwise disposed of buildings in the way of the Forum project. Electricity lines, telephone lines, gas lines, water and cable lines in conflict with the construction site were relocated. The site was razed and rough-graded. Three sets of environmental tests and borings were performed on the soil; a portion of the soil was found to be contaminated and was removed.

Subsequently two new commissioners were elected to the Floyd County Board of Commissioners. Shortly thereafter, in May 1991, the Board voted to move the civic center element of the Forum to another location and to downgrade its size. The newly composed Board purchased property in another area of the county for a softball complex, and raised the issue of whether it would abandon the original softball complex site purchased with SPLOST funds.

The appellees brought this action for mandamus and injunctive relief against the Floyd County Board of Commissioners, seeking to require the Board to construct the Forum and softball complex in accordance with the SPLOST Report as adopted by the Board in June 1988. The trial court found that the Board's attempts to abandon the SPLOST projects at issue constituted waste, and breached the Board's fiduciary duty to the public. The trial court ordered the Board to proceed with all SPLOST projects listed in the SPLOST budget and account reports. The trial court further ordered the Board to reimburse the SPLOST account for any SPLOST funds spent on plans and development alternatives to the Forum project and the site of the original softball complex.

1. Part of the proposed site for the Forum is in the 100-year flood plain. The architectural plans for the Forum call for filling in the flood plain, thereby moving it, and constructing the two component

buildings at different elevations. Extensive footings and pylons will be necessary for support and are included within the budget for the Forum. The plans additionally call for the construction of a retaining wall. The architectural plans for the Forum are site-specific and may not be used if elements of the Forum are separated. The Board has paid approximately $500,000 for these plans.

There is evidence in the record to show that by linking the two buildings the costs of utilities will be lowered. Additionally there was expert testimony that there are five points of public access to the Forum site, making it superior to most locations which have only one or two points of access.

At trial four commissioners testified that they do not wish to build the Forum on the original site because of their concerns that a portion of it would be in the flood plain. One of the commissioners additionally testified that he does not want to have the civic center element of the Forum located in the downtown Rome area.

The trial court found that the site selected for the Forum is suitable and buildable. This finding is amply supported by the record. The trial court additionally found that approximately $2.5 million, or 19 percent of the total Forum budget, has been expended to build the Forum on the site originally selected.

While recognizing that the county commissioners have broad discretion to conduct county affairs, the trial court concluded that the Board's attempts to abandon the Forum project after spending $2.5 million to acquire and develop the project is an abuse of the Board's discretion. The trial court also found that if the Board is permitted to relocate the Forum, it will have wasted and diverted taxpayer funds. The trial court therefore enjoined the Board from proceeding with plans to relocate the Forum.

Like the trial court, we are reluctant to interfere in the manner in which a county commission conducts county business affairs. The law grants to a county commission a broad discretion to exercise control over public property, *Woodard v. Smith*, 254 Ga. 39 (325 SE2d 377) (1985), and dictates that this discretion will not be interfered with by the courts absent clear abuse. *Lovett v. Bussell*, 242 Ga. 405 (249 SE2d 86) (1978); *Woodard v. Smith*, supra; *Wheeler v. DeKalb County*, 249 Ga. 678 (292 SE2d 855) (1982).

However, the evidence in this case compels us to agree with the trial court that the Board has abused the discretion with which it is vested. The four commissioners who voted to abandon the selected site for the Forum testified that they wished to do so because they were of the personal opinions that the Forum should not be built in the flood plain. However, the overwhelming expert evidence at trial was that the architectural plans for the Forum render the site both suitable and buildable. Other evidence supports the trial court's find-

ing that much of the $2.5 million already spent will have been wasted if the site is not used as planned. It is further apparent that there might never be funds with which to build the contemplated complex if the site for the Forum is changed, and substantial sums of SPLOST monies expended, following each election of members to the Board.

While the Chairman of the Board of Commissioners testified that the Board had the discretion to "turn this courthouse [in which the trial took place] into a closet," if it chose to do so, we do not agree that the Board's discretion is that broad. Rather, we agree with the trial court that the Board abused its discretion in deciding, without benefit of any plans or studies, to bisect the Forum and move a portion of it to an undetermined area, and after spending 19 percent of the budget for the entire project when the evidence does not support the Board's opinion that the Forum cannot be safely and suitably built on the original site. Thus we affirm that portion of the trial court's order requiring the Board to "proceed with the Forum project between Second Avenue and Fifth Avenue on the Oostanaula River in accordance with the plans and specifications prepared for this site."

2. The Board originally purchased property for a softball complex adjacent to existing ball fields. Following the election of two new members to the Board it purchased another parcel of property for the softball complex and began discussing whether to abandon the original site. The trial court found that the Board abused its discretion in purchasing a second site on which to build the complex, concluding that the Board was wasting SPLOST funds. The record shows that the site originally selected is more centrally located in the county than the second site purchased, and that the original site would involve the expansion of existing ball fields. However, there is also some evidence in the record that it would be very expensive to grade the original site, thus making the costs of the two sites more compatible. Further, it is not apparent from the record before us that the Board has ever voted to abandon the original site of the softball complex. We cannot say, based on this evidence, that the Board has abused its discretion in purchasing additional property for a softball complex. Insofar as the trial court's order holds that the Board is bound by the SPLOST budget and account reports to build a softball complex on the originally selected site, it is reversed.

3. The trial court held that, if in the future, the Board refuses to proceed with the SPLOST projects listed in the SPLOST budget and account reports, it will abuse its discretion. The trial court also held that the Board is required to proceed with the SPLOST budget and account reports "to the extent that such SPLOST projects are not inappropriate or unreasonable."

The SPLOST Act, OCGA § 48-8-110 et seq., provides that the proceeds from the SPLOST tax "shall be used by the county *exclu-*

*sively* for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax." (Emphasis supplied.) OCGA § 48-8-121 (a) (1). OCGA § 48-8-121 (a) (2) requires the county to maintain a financial record of each project for which the proceeds of the tax are used. This record will be subject to an annual audit under the provisions of this Code section.

In this case the resolution referred to in OCGA § 48-8-110, supra, called for the imposition of the SPLOST tax to construct, inter alia, "recreational facilities and multi-purpose governmental facilities." Budget and account reports were then prepared listing the specific SPLOST projects to be developed.

Construing these Code sections, we hold that the Board is not authorized to use proceeds from the SPLOST tax for a purpose entirely different from that contained in the SPLOST budget and account reports. We further hold that the Board is bound by the SPLOST budget and account reports to complete all projects listed therein unless circumstances arise which dictate that projects which initially seemed feasible are no longer so. In this regard the governing authority has discretion to make adjustments in the plans for these projects, but may not abandon the projects altogether.

Our decision here does not affect our holding in Division 1. We again affirm the trial court's determination that the Board abused its discretion in attempting to abandon the Forum project along the Oostanaula River as specified in the plans and specifications drawn for this site, and abused its discretion in attempting to relocate this project.

4. We affirm the remaining provisions of the trial court's order.

*Judgment affirmed in part and reversed in part. Bell, P. J., Hunt, Benham, Fletcher and Sears-Collins, JJ., concur.*

DECIDED SEPTEMBER 18, 1992 — RECONSIDERATION DENIED OCTOBER 13, 1992.

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Jeffrey G. Casurella, William E. Brannon,* for appellants.

*Brinson, Askew & Berry, Robert M. Brinson, J. Anderson Davis, H. L. Cromartie III, Gammon & Anderson, Wayne W. Gammon, James S. Garner III,* for appellees.