## S93A1430. POWELL et al. v. STUDSTILL et al.
### (441 SE2d 52)

BENHAM, Justice.

Appellants are members of the Berrien County Board of Education which, in 1988, adopted a facilities plan that proposed consolidation and closure of four schools.[1] The Board voted to close four small schools, build a new middle school, and consolidate the middle-school students from the closed schools into the new school. Two of the closed schools were to be renovated, one to house the county's kindergarten through second-grade students, and the other to house stu-

---

[1] Since one of the schools subsequently was destroyed by fire, the consolidation and closure of *three* schools is at issue in the present case.

dents in grades three through five. Appellee Studstill, a Berrien County taxpayer and the mayor of Ray City, the site of one of the schools to be closed, filed this lawsuit in November 1991, asking the court to require the Board to hold an evidentiary hearing or referendum on the closing and consolidation.

After holding a hearing on January 6, 1992, the trial court entered an interlocutory order restraining appellants from closing the three schools, but allowing Phase I of the Board's plan, the construction of the new middle school. A year later, on January 14, 1993, the trial court entered an order restraining appellants from accepting bids for Phase II of its consolidation project, the renovation of the two schools to house the kindergarten and grade school students. The trial court entered the restraining order after concluding there was a significant likelihood of irreparable harm since there had been no final ruling on the issue of whether the three schools were to be closed. On June 10, 1993, the trial court entered its final order, permanently enjoining the county board of education from consolidating and closing the three schools due to the board's failure to comply with OCGA §§ 20-2-260 (k.1), (r); 20-2-167 (a) (5), a 1969 desegregation agreement, and the Individuals with Disabilities Education Act, 20 USC § 1401 et seq. In its order, the trial court required the county board of education to renovate, replace, and modernize the three schools; to use the schools' trustees; to comply with statutes concerning the designation of monies; and to apply for and take measures to receive and use state capital outlay funds. Appellants appealed the trial court's order.

> 1. The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. This power shall be prudently and cautiously exercised and, except in clear and urgent cases, should not be resorted to.

OCGA § 9-5-8. The appellate courts will not interfere with a trial court's exercise of its discretion in granting an injunction absent a manifest abuse of discretion. *Slaven v. City of Buford*, 257 Ga. 100 (355 SE2d 663) (1987).

2. The local board of education is constitutionally empowered to manage and control the school system. 1983 Ga. Const., Art. VIII, Sec. V, Par. II states: "Each school system shall be under the management and control of a board of education, the members of which shall . . . reside within the territory embraced by the school system . . . ."

> Here is complete constitutional vesting of authority to manage and control county schools in the county board of educa-

tion. It harmonizes perfectly with repeated and consistent rulings of this court. Any challenge of acts of the county board relating to control and operation of schools must be weighed in light of this sweeping power, which clearly manifests an intent to entrust the schools to the boards of education rather than the courts. Unless the act of a board violates some law, or is such a gross abuse of discretion as amounts to a violation of law, courts should not and can not interfere.

*Bedingfield v. Parkerson*, 212 Ga. 654 (1) (94 SE2d 714) (1956). Thus, if the school board's proposed action to close and consolidate the county's schools is a matter over which the board had no jurisdiction or would be illegal or contrary to law, the trial court acted properly in issuing the injunction. *Irwin v. Crawford*, 210 Ga. 222, 225 (78 SE2d 609) (1953).

The Quality Basic Education Act authorizes the local board of education to "organize or reorganize the schools and fix the grade levels to be taught at each school in its jurisdiction." OCGA § 20-2-290. After reviewing the record and the litany of statutory violations found by the trial court to have been committed by the school board, we conclude that the school board had jurisdiction to consolidate and close the schools, that it did not act illegally or contrary to law, and that the trial court abused its discretion when it entered the injunction at issue.

3. In 1992, while this litigation was pending, the General Assembly passed several amendments to the Quality Basic Education Act. See Ga. L. 1992, p. 3174. In its 1993 order, the trial court found that the local board of education had not complied with the requirements of two of the amendments, OCGA § 20-2-260 (k.1) and (r) (Ga. L. 1992, p. 3164, §§ 4, 5),[2] and based, in part, its issuance of the injunc-

---

[2] Subsection (k.1) provides:
Prior to a local board of education's submitting an advanced incentive funding request to the State Department of Education for State Board of Education approval under subsections (i) [capital outlay funds for construction projects to consolidate or reorganize schools] and (j) [planning studies] of this Code section, the local board of education shall conduct the following:
(1) The board of education must schedule and hold at least two public hearings and provide an opportunity for full discussion of the local board of education's consolidation or reorganization plan;
(2) The public hearings shall be advertised in the official newspaper and shall include . . .;
(3) The board of education shall request formal, written comments or suggestions regarding the system's organizational pattern or school sizes and shall allow appropriate discussion during the public hearings;
(4) Any registered voter may file with the local board of education a notice of intent to file a petition when the voter wishes to express opposition to a school sys-

tion on the local board's failure to comply. We must, therefore, determine whether subsections (k.1) and (r) are to be given retroactive effect, keeping in mind that "[l]aws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation." OCGA § 1-3-5.[3]

(a) Compliance with subsection (k.1) is, by its very terms, to precede the local board's submission of an applicable funding request to the State Department of Education. The Berrien County Board of Education submitted its funding request to the State in 1990, well before the enactment of subsection (k.1) in 1992. As can be gleaned from reading subsection (k.1), it is substantive law as it creates rights, duties, and obligations; furthermore, subsection (k.1) contains no expressed or clear legislative intent that it be given retroactive effect. Therefore, it cannot be applied retroactively to the situation at bar. *Polito v. Holland*, 258 Ga. 54 (3), (5) (365 SE2d 273) (1988).

(b) We now turn to subsection (r), which requires compliance with subsection (k.1) (5), "[n]otwithstanding any other provisions of this Code section," if a local board "is under litigation to prevent a

---

tem's local facilities plan as it pertains to consolidation of schools within that system. A petition with the signature[s] of at least 25 percent of the qualified registered voters within that system's jurisdiction must be filed with the board of education within 60 days after notice of intent to file a petition has been received by the board. The signatures on the petition must be validated against the official list of registered voters;

(5) The local board of education and the petitioners shall meet to resolve differences. The petitioners shall select a delegation of no more than ten members . . . . The local board of education shall render a final decision on the petition within 60 days from the initial meeting to discuss differences; and

(6) An opposition report shall be filed by the board of education to report resolution of opposition before advanced incentive funds shall be awarded to that system.

Subsection (r) provides:

Notwithstanding any other provisions of this Code section, when the [local] board of education . . . has called and held a bond election to incur bonded indebtedness to construct a school or schools for the purpose of high school consolidation within the school system and a majority of the voters voting in said bond election voted against incurring such debt or a local board is under litigation to prevent a consolidation project under subsection (h) or (i) and (j) of this Code section, whether funds have been allocated or not, the procedures established in paragraph (5) of subsection (k.1) of this Code section shall be followed.

[3] The Board suggests that the General Assembly expressed its intent that the amendments are inapplicable to the situation presented by the case at bar by its inclusion of § 6 of Ga. L. 1992, p. 3164:

Nothing contained in this Act shall affect any payment or allocation to any board of education of a local system as a result of bond proceeds authorized and sold under the provisions of House Bill 1262, Supplemental Appropriations Bill, passed on February 10, 1992, and payment shall be made to said boards of education as provided for in said House Bill 1262.

However, we cannot determine from the record before us that the supplemental appropriations bill, H.B. 1262 (Ga. L. 1992, p. 379), which was passed on March 3, 1992, included the Berrien County funding approved by the State Board of Education on March 12, 1992.

consolidation project . . . whether funds have been allocated or not. . . ." Subsection (k.1) (5), effective May 7, 1992, requires the local board to meet with consolidation opponents to discuss differences prior to applying for state funding. Thus, (k.1) (5) requires school boards that apply for state funding after May 7, 1992, to meet and talk with consolidation opponents. Presuming, as we must, that the legislature meant something by the passage of subsection (r) and, charged with the duty to construe a statute so as not to render it meaningless (*Buice v. Dixon,* 223 Ga. 645, 646-647 (157 SE2d 481) (1967)), we conclude that subsection (r)'s meeting requirement must have been legislatively intended to apply to those local boards which applied for state funding before the effective date of subsection (k.1) and which thereafter found themselves embroiled in litigation seeking to prevent planned consolidation. Therefore, subsection (r) was intended to have retrospective effect and is applicable to the case at bar. See *Polito v. Holland,* supra. The record reflects that the school board fulfilled its duty under subsection (r) when it met with a delegation of consolidation opponents to discuss their differences.[4]

4. The board's failure to utilize school trustees, whose appointment is provided in OCGA § 20-2-80, does not amount to an abuse of discretion sufficient to enjoin consolidation and closure of county schools since the duty of the school trustees is only to make advisory recommendations to the board on "matters relating to the school of which they are trustees," and the board "is not bound to observe or follow them." OCGA § 20-2-81.

5. Apparently referring to April 1969 correspondence between the Berrien County Board of Education and the Office of Civil Rights of the U. S. Department of Health, Education, and Welfare, the trial court determined that a desegregation plan was in place in Berrien County, and enjoined the school board from closing and consolidating schools "[u]nless the desegregation plan is changed . . . ." The 1969 correspondence reflects that the school board agreed "to completely eliminate the dual structure of the schools in Berrien County" by housing all students in the same grade in each school district in the same school. The consolidation plan currently under scrutiny ensures there will be no racially-based dual school system by providing that all students in the same grade will be housed in the same school — albeit in a district that is now county-wide. The trial court abused its discretion when it relied on the desegregation agreement to enjoin the closure and consolidation of the county's schools.

6. The trial court also enjoined school consolidation and closure

---

[4] A transcript of the meeting, called pursuant to subsection (k.1) (5), is a part of the appellate record.

on the ground that the local board had violated OCGA § 20-2-167 (a) (5) when it

> accumulated monies from unidentified sources which have not been designated to a special account or fund in the budget, . . . and . . . established a capital accumulation fund without clearly and specifically identifying the purpose for which such amounts will be expended and the anticipated date of expenditure.

OCGA § 20-2-167 (a) (5) authorizes a local school system to establish a single reserve fund or account to cover unanticipated revenue shortfalls or unanticipated expenditures; the statute also permits the school system to establish capital accumulation funds or accounts and to allocate amounts to those accounts for spending in future budget years if the purpose of the future expenditure and its anticipated date of expenditure are clearly and specifically identified. The apparent basis for the trial court's finding is the testimony of the chairman of the local school board that the board's accounting books had an "undesignated capital outlay" account which was used for projects not designated in the budget. Even if we were to assume that the "undesignated capital outlay" account was a capital accumulation account requiring identification and specification of future expenditures, rather than a reserve fund to cover unanticipated expenditures and revenue shortfalls, issuance of a permanent injunction enjoining the closure and consolidation of the system's schools is too harsh a sanction to impose for the purported violation.

7. In its order, the trial court found that handicapped children attended the schools slated for closure, and that the transfer and busing of the children to a consolidated school would constitute a change in placement, triggering the notice requirements of the Individuals with Disabilities Education Act (formerly known as the Education of the Handicapped Act), 20 USC § 1415. Finding no evidence that the parents of the affected handicapped children had been notified of the change in placement, the trial court enjoined the board from transferring any handicapped children to the consolidated schools without complying with all state and federal laws regarding change in placement.

(a) While we note that the notice and hearing provisions of the Act are for the benefit of the parents or guardians of a handicapped child receiving a public education and there is no evidence that any of the appellees is the parent or guardian of such a handicapped child, we will assume, for the sake of argument, that appellees had standing as citizens seeking to "procure the enforcement of a public duty" to demand compliance with the Act. See OCGA § 9-6-24. See also *Arne-*

*son v. Bd. of Trustees &c.*, 257 Ga. 579 (361 SE2d 805) (1987); *League of Women Voters v. City of Atlanta*, 245 Ga. 301 (1) (264 SE2d 859) (1980).

(b) The primary purpose of the Act is to encourage states,

> through the use of fiscal incentives, to provide a "free appropriate public education" for all handicapped children. [Cit.] In furtherance of this goal, the Act also embodies a range of procedures designed to ensure that fundamental decisions concerning the education of handicapped children are made correctly and with appropriate input from the parents or guardians of such children. [Cit.] . . . Pursuant to 20 U. S. C. § 1415(b) (1) (C), whenever an educational agency covered by the Act (i) proposes to initiate or *change . . . educational placement* of the child . . . it must provide the parents or guardian of the child with prior written notice. . . .

*Concerned Parents &c. v. New York City Bd. of Ed.*, 629 F2d 751 (1) (2nd Cir. 1980). However, as the Second Circuit noted, the Act does not provide a definition for the term "change . . . [in] educational placement." The judicial struggle over the term has resulted in determinations that a change in educational placement does not occur unless there is a fundamental change in, or elimination of, a basic element of the education program (*Lunceford v. District of Columbia Bd. of Ed.*, 745 F2d 1577 (D.C. Cir. 1984)); a change in educational placement does not occur unless the general educational program in which the child is enrolled is affected (*Christopher P. v. Marcus*, 915 F2d 794, n. 1 (2nd Cir. 1990)); and a transfer from one school to another with a comparable program is not a change in educational placement. *Tilton v. Jefferson County Bd. of Ed.*, 705 F2d 800 (6th Cir. 1983). Thus, the trial court's determination that the transportation and placement of the handicapped children in larger schools constituted a change in educational placement, without more, was erroneous as a matter of law and cannot serve as a basis for enjoining the closure and consolidation of the schools.

In light of the above, the trial court abused its discretion when it issued a permanent injunction enjoining the Berrien County Board of Education from closing and consolidating the county's schools.

8. In addition to issuing the injunction, the trial court also ordered the school board to repair the schools slated for closure, construct any new buildings needed at those sites, and "apply for and take all appropriate measure to receive and utilize state outlay capital funds to so renovate, modernize and replace" the schools. In entering such an order, the trial court made decisions involving the management and control of the county schools, matters that the Georgia

Constitution has delegated to the local board of education, not the courts. See Division 2, supra. In the absence of evidence that the board of education's decisions violated law or were such a gross abuse of discretion as to be a violation of law, the trial court erred when it intervened in the affairs of the school system by ordering the local board to take specified action. See *Deriso v. Cooper*, 246 Ga. 540 (272 SE2d 274) (1980).

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATIONS DENIED MARCH 25, 1994 AND APRIL 15, 1994.

*Harben & Hartley, Sam S. Harben, Jr., Phillip L. Hartley, Martha M. Pearson, Moore & Studstill, Daniel L. Studstill,* for appellants.

*Sutton & Asociates, Berrien L. Sutton,* for appellees.

*Michael J. Bowers, Attorney General, Kathryn L. Allen, Dennis R. Dunn, Senior Assistant Attorneys General, Kirwan, Goger, Chesin & Parks, A. Lee Parks,* amici curiae.