S98A1977. THORNTON et al. v. CLARKE COUNTY SCHOOL
DISTRICT et al.
(514 SE2d 11)

THOMPSON, Justice.

Appellants herein are taxpayers, residents, and voters of Athens-Clarke County, Georgia ("Thornton") who filed suit against the Clarke County School District ("School District") seeking a declaratory judgment, mandamus, and injunctive relief to prevent construction of a new Cedar Shoals High School. It was asserted that the School District was in violation of the Georgia Environmental Policy Act ("GEPA"), and failed to comply with a local referendum authorizing the school project. The trial court granted the School District's motion to dismiss the complaint, ruling that the GEPA does not apply to the Clarke County School District under that Act's definition of "government agency"; and that the School District has complied with the referendum. Thornton challenges both aspects of that ruling. Finding no error, we affirm.

Under authority of a state constitutional amendment allowing certain school districts to impose a sales tax for educational purposes, Ga. Const. of 1983, Art. VIII, Sec. VI, Par. IV, the voters of the Clarke County School District passed a referendum in 1997, authorizing a one percent sales and use tax to raise a maximum of $90 million dollars to retire general obligation school bonds totaling approximately $22 million. The referendum specified that the tax was also

necessary to "provid[e] funds to pay the costs of acquiring, constructing and equipping a new Cedar Shoals High School, adding to, renovating, repairing, improving and equipping Clarke Central High School, acquiring any necessary real or personal property and equipment and adding to, renovating, repairing, improving and equipping existing educational buildings, properties and facilities of the School District, and paying expenses incident thereto, at a cost of approximately $68 [million]."

In anticipation of the referendum, the School District obtained proposals and cost estimates from several architectural and engineering firms, and held open board meetings and public forums to exchange information concerning the projects. In this regard, the public was advised that the estimated cost of a new high school would be $18 million, and that one option included demolishing the existing high school and building a new one on the same campus.

1. The GEPA requires a "government agency" to prepare an environmental effects report before proceeding with any governmental action that could "significantly adversely affect the quality of the environment." OCGA § 12-16-4 (a). The Act defines "government agency" as "any department, board, bureau, commission, authority, or other agency of the state." OCGA § 12-16-3 (5). Thornton's claim turns on whether the School District falls under the Act's definition of government agency, and if so, whether its noncompliance resulted in a violation of the law.

In interpreting statutes, "[i]t is . . . fundamental that the courts must look to the purpose and intent of the legislature and to construe the law to implement that intent." *Wilson v. Bd. of Regents*, 246 Ga. 649, 650 (272 SE2d 496) (1980). " 'The construction [of statutes] must square with common sense and sound reasoning.' " *Tuten v. City of Brunswick*, 262 Ga. 399 (7) (418 SE2d 367) (1992).

The GEPA does not specifically exclude any governmental entities from the definition of "government agency," nor does it specifically include school districts or other political subdivisions.[1] OCGA § 12-16-3. But a fair reading of the Act convinces us that it was not intended to apply to school districts. The preamble to the Act states as one of its purposes that it is "to provide for the disclosure of the environmental effects of proposed *state* projects." (Emphasis supplied.) Ga. L. 1991, p. 1728. The Act specifies that "*State* agencies should conduct their affairs with an awareness that they are stewards of . . . environmental . . . resources." (Emphasis supplied.) OCGA § 12-16-2 (2). The Act includes as a "proposed governmental action" the "sale or exchange of more than five acres of *state* owned

---

[1] It is undisputed that the School District is a political subdivision of the state.

land." (Emphasis supplied.) OCGA § 12-16-3 (7). Although we have held in the context of sovereign immunity that the term "state agency" or "department" included counties and other political subdivisions of the state, those holdings were limited to the constitutional doctrine of sovereign immunity to effectuate its stated purposes. *Gilbert v. Richardson*, 264 Ga. 744 (2) (452 SE2d 476) (1994). We decline to extend our broad reading of that doctrine to construction of this statute.

Finally, the Act contains a provision defining "proposed governmental action" that excludes actions by municipalities and counties, unless more than 50 percent or more than $250,000 of the cost of the action is funded by a government agency. OCGA § 12-16-3 (7). The most logical reading of this provision is that municipalities and counties are not included in the definition of "government agency," otherwise there would have been no need to include a separate provision specifying a condition of their inclusion. Clearly, then, the legislature did not intend for the phrase "government agency" to receive the broadest possible interpretation.

We find no reason to read school districts into the definition of government agency when it is clear from reading the statute as a whole that other political subdivisions of the state are excluded. Construing all of the component parts of the statute together leads to the conclusion that the Act was not intended to apply to local school districts.

2. Thornton also alleges that the School District has abused its discretion in carrying out the referendum in that, among other things, (1) the School District is not authorized to demolish the existing high school, (2) the cost of constructing a new high school and demolishing the existing one greatly exceeds the published estimate, and (3) anticipated revenues are likely to fall short of the $90 million projection, leaving less money than was implicitly promised for improvement of other educational facilities.

A local school board has broad discretion to control the operation of the school system, and courts will not interfere unless there has been a violation of law or an abuse of discretion. *Powell v. Studstill*, 264 Ga. 109 (2) (441 SE2d 52) (1994). The referendum authorizing the school projects contained a maximum dollar amount that could be raised by the one percent sales tax, but did not itemize an amount to be spent on each project. While the referendum addressed neither the estimated $18 million for construction of a new high school, nor plans for the existing high school, these matters were discussed by school board members at public meetings. Because none of the school board's plans violates the referendum, we find no violation of law or an abuse of discretion if the school board were to demolish the existing high school or to spend more than the estimated $18 million

for construction of a new school.

Thornton argues that the school board is bound by representations it made to the public, under OCGA § 36-82-1 (d), which requires governmental entities which issue revenue bonds to adhere to any statements of intentions made regarding the use of the funds. Thornton's reliance on that statute is misplaced since it pertains specifically to bonded debt, whereas the referendum at issue in this case involves sales and use taxes. And the constitutional provision authorizing the present referendum does not contain a similar provision regarding adherence to statements of intentions. The fact that the referendum provided for the discharge of bonded indebtedness with a portion of the sales taxes generated did not convert the nature of the referendum into one pertaining to bonded debt.

In *Dickey v. Storey*, 262 Ga. 452 (423 SE2d 650) (1992), we held that a county board of commissioners did not abuse its discretion when it selected an alternate site from the one originally approved, and purchased additional property on which to build a softball complex with special purchase local option sales tax money, approved by referendum. Id. at 455. There, the referendum authorized a sales tax to generate revenue to build "'recreational facilities and multipurpose governmental facilities,'" but it did not identify sites for the facilities. Id. at 453. We held that the county had "discretion to make adjustments in the plans for these projects, but [could] not abandon the projects altogether." Id. at 456. As an entity with similar powers, the Clarke County School District has discretion to make decisions that fall within the authorization of the referendum.

It follows that the School District retained discretion to alter its plans which did not contravene the terms of the referendum or otherwise violate the law. *Powell*, supra; *Dickey*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 8, 1999.

*Alan M. Alexander, Jr.,* for appellants.

*McLeod, Benton, Begnaud & Marshall, Terrell W. Benton, Jr., Malcolm C. McArthur, William C. Berryman, Jr., Alston & Bird, Karol V. Mason, Harben & Hartley, Sam S. Harben, Jr., Phillip L. Hartley,* for appellees.