## S06A0400. JOHNSTONE et al. v. THOMPSON.

### (631 SE2d 650)

HUNSTEIN, Presiding Justice.

Joseph C. Thompson, a Cobb County taxpayer, brought a petition against the Cobb County School Board, its members and its superintendent (hereinafter "appellants"), seeking mandamus and injunctive relief regarding appellants' use of proceeds from a special purpose local option sales tax ("SPLOST") for educational purposes. At issue was the $75 million technology portion of the SPLOST proceeds, specifically, appellants' decision to use $59 million of the technology portion to fund its "Power to Learn" initiative, which would provide a laptop computer for every middle and high school student in the Cobb County School District. Appellee contended that appellants' decision constituted an abuse of discretion and that appellants were required by statutory and case law to use the SPLOST technology funds to implement the system-wide technology initiatives set out in documents, such as a SPLOST notebook, a facility group report and pamphlets, promulgated by appellants and widely disseminated to obtain voter approval of the SPLOST. The trial court granted appellee's petition for writ of mandamus and enjoined appellants from proceeding with the Power to Learn initiative. We affirm because appellants were not legally authorized to use the SPLOST proceeds for a purpose entirely different from that contained in the SPLOST documents and the evidence supports the trial court's conclusion that the Power to Learn initiative was such an entirely different purpose.[1]

Pursuant to Art. VIII, Sec. VI, Par. IV (a), Ga. Const. 1983, the Cobb County Board of Education sought to reimpose a SPLOST for educational purposes. "Proceedings for the reimposition of such [a SPLOST] shall be in the same manner as proceedings for the initial imposition of the tax." Id. As to that initial imposition, Art. VIII, Sec. VI, Par. IV (a) provides that "except as otherwise provided in this Paragraph," the SPLOST in all other respects "shall correspond to and be levied in the same manner as the tax provided for by [OCGA § 48-8-110 et seq.]." See also OCGA § 48-8-141.[2] By this language, Art. VIII, Sec. VI, Par. IV (a) requires reference to all of the provisions of OCGA § 48-8-110 et seq., "except as otherwise provided" by the constitutional provision.[3] The statutory provision pertinent to this

---

[1] Appellee's motion to dismiss the appeal as moot is denied.

[2] In light of this constitutional and statutory language, we find no merit in appellants' argument that the trial court inappropriately looked to the county SPLOST provisions in OCGA § 48-8-110 through § 48-8-122 and case law interpreting those provisions when resolving this case.

[3] We thus reject appellants' argument that for purposes of an education SPLOST, reference to OCGA § 48-8-110 et seq. is limited to matters of levying and collection.

appeal is OCGA § 48-8-121 (a) (1), which requires that a SPLOST "shall be used . . . exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax." See also OCGA § 48-8-111 (a) (1).[4]

In this case, the resolution for the reimposition of the SPLOST provided that the funds generated by the SPLOST would be used, in part, on certain designated capital outlay projects, including

> [m]aking system-wide technology improvements, including, but not limited to: acquisition and installation of instructional technology and information systems hardware and associated software, and infrastructure at all schools and selected other facilities . . . .

The ballot language sought voter approval to impose the SPLOST for educational purposes including "new schools, land, additions, renovations, equipment, and technology systems." The SPLOST notebook promulgated by appellants detailed eight "Curriculum/Technology Initiatives," with an estimated cost for each initiative. Included among the initiatives was "refresh obsolete workstations," which the notebook estimated required replacing 30,563 units[5] that would affect "students and staff in all academic areas."

Appellants argue that the Power to Learn initiative comports with the directive in OCGA § 48-8-121 (a) (1) that SPLOST proceeds be spent exclusively for the purposes specified in its resolution because the phrases "technology systems" and "technology improvements" used, respectively, in the resolution and ballot language were general enough to include the Power to Learn initiative. This Court has recognized that a local school board "has discretion to make decisions that fall within the authorization of [a SPLOST] referendum" as long as the alteration in its plans does not "contravene the terms of the referendum or otherwise violate the law. [Cits.]" *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 636 (514 SE2d 11) (1999). *Thornton* relied upon *Dickey v. Storey*, 262 Ga. 452 (423 SE2d

---

[4] We find no merit in appellants' argument that OCGA § 48-8-111 (a) (1) provides "otherwise" than Art. VIII, Sec. VI, Par. IV (c), when it requires the SPLOST resolution to "specify" the purposes (including capital outlay projects) for which the SPLOST proceeds are to be used, see also OCGA § 48-8-121 (f), whereas the constitutional provision requires the resolution to "describe" those purposes. This argument overlooks the fact that Art. VIII, Sec. VI, Par. IV (c) (1) requires the resolution to "describe" the "*specific* capital outlay projects to be funded." (Emphasis supplied.)

[5] The SPLOST notebook commented that "[t]he number of computers to be replaced includes those reported on the 2001 DOE inventory plus those provided for schools by SPLOST in 2002 and 2003 as well as 700 used by district level staff in 2002."

650) (1992), a case involving a county SPLOST referendum to generate funds to build " 'recreational facilities and multi-purpose governmental facilities,' " but which did not identify sites for the facilities. Id. at 456 (3). Instead, "[b]udget and account reports were then prepared listing the specific SPLOST projects to be developed." Id. The *Dickey* Court construed the applicable statutes and held that

> the Board is not authorized to use proceeds from the SPLOST tax [sic] for a purpose entirely different from that contained in the SPLOST budget and account reports. We further hold that the Board is bound by the SPLOST budget and account reports to complete all projects listed therein unless circumstances arise which dictate that projects which initially seemed feasible are no longer so. In this regard the governing authority has discretion to make adjustments in the plans for these projects, but may not abandon the projects altogether.

Id. Accordingly, we upheld the trial court's determination that the Board was required to complete the multi-purpose government facility at the site as specified in the plans and specifications drawn for the site, id., but reversed the ruling as to a recreational facility where it was "not apparent from the record before us that the Board has ever voted to abandon the original site" identified in the report adopted by the SPLOST committee. Id. at 455 (2).

Contrary to appellants' argument that our holding in *Thornton*, supra, required the trial court to uphold the decision to use the technology SPLOST funds for the Power to Learn initiative, we find the trial court correctly recognized that *Thornton* is factually distinguishable, given the holding that none of the plans by the school board in *Thornton* violated that particular SPLOST referendum, id., 270 Ga. at 635 (2), and indeed that the school board in that case had specifically advised the public during meetings and public fora conducted in anticipation of the referendum about the particular plan option it eventually chose to pursue. Id. at 634. In contrast, the evidence in this case authorized the trial court to find, as in *Dickey*, supra, that the general language in the referendum and ballot about technology improvements and technology systems referred to the proposed capital outlay projects detailed in the SPLOST notebook and that appellants were bound by these specifically delineated projects in the SPLOST notebook, just as the county Board in *Dickey* was bound by the SPLOST budget and account reports promulgated in that case. The evidence also authorized the trial court to reject appellants' argument that the Power to Learn initiative was the functional equivalent of the SPLOST notebook project to "refresh

obsolete workstations," given that the Power to Learn initiative provided laptop computers only to middle and high school students,[6] whereas the SPLOST notebook project specified it was for the purpose of updating computer laboratory workstations used by all of the school district's students, elementary as well as middle and high schools. We are not persuaded by appellants' argument that the SPLOST referendum language gave them the discretion to use the funds to provide any type of technology system to less than all of the school district students.[7]

"Mandamus will issue only where the petitioner has demonstrated a clear legal right or a gross abuse of discretion. [Cit.]" *City of Alpharetta v. Estate of C.R. Sims*, 272 Ga. 680 (533 SE2d 692) (2000). The evidence authorized the trial court to find that appellants failed to comply with their clear legal duties when they sought to "rebudget" the original technology initiatives in favor of the Power to Learn initiative and that they abused their discretion when they abandoned the original initiatives even though those initiatives remained feasible of completion. See *Dickey*, supra, 262 Ga. at 456 (3). For the reasons set forth above, the trial court's ruling was consonant with our decisions in *Thornton* and *Dickey*, supra, and thus we reject appellants' argument that appellee had no clear legal right to the mandamus relief granted in this case.

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in the judgment only, and Sears, C. J., and Melton, J., who dissent.*

MELTON, Justice, dissenting.

Neither case law nor statutory authority supports a finding that the Cobb County School Board abused its discretion by allocating SPLOST tax proceeds to a small pilot program of its Power to Learn initiative. In addition, a holding that the Cobb County School Board may be bound by its statements of intent contained in informational pamphlets and documents contradicts our constitution, the statutory authority contained in OCGA § 48-8-121, and our prior holding in

---

[6] Appellants challenge the trial court's "assumption" that the Power to Learn initiative would be fully implemented. Although there was evidence to support the trial court's finding, even assuming, arguendo, that appellants had decided against fully implementing the initiative, this shows only that the initiative would benefit an even smaller number of the district's students and thus reinforces the trial court's finding that by promulgating the initiative appellants sought to use the SPLOST proceeds for an entirely different purpose from that contained in the SPLOST notebook.

[7] Under appellants' rationale, they could have earmarked all the SPLOST technology funds for, e.g., the purchase of electronic musical instruments, studio mixers and computer audio interfaces for the school district's band students to the exclusion of other students and their technology needs.

*Thornton v. Clarke County School Dist.*, 270 Ga. 633 (514 SE2d 11) (1999). Accordingly, I must respectfully dissent.

This Court considered limitations on the use of SPLOST funds in *Dickey v. Storey*, 262 Ga. 452, 456 (3) (423 SE2d 650) (1992), regarding a referendum which approved a tax for the purposes of raising funds to construct " 'recreational facilities and multi-purpose governmental facilities.' " Shortly after this referendum passed in August of 1998, the Floyd County Board of Commissioners acquired land for a softball complex (the "recreational facilities") and for a civic center (the "multi-purpose governmental facilities"), and afterwards the Floyd County Board listed its projects and created a budget for them to track expenditures as required by OCGA § 48-8-121 (a) (2). With regard to the planned civic center, over the next few years, the Floyd County Board spent $2.5 million preparing the site they had acquired. Then, after the election of two new members, the reconstituted Floyd County Board voted to move the civic center to a completely different site and change its design and size. The Floyd County Board also acquired a different plot of land for the planned softball complex other than the original site, and it "raised the issue of whether it would abandon the original softball complex site." *Dickey*, supra at 453. No vote, however, was actually taken on this issue. Taxpayers thereafter challenged the Floyd County Board's decisions as being incompatible with the referendum, arguing that the Floyd County Board had abused its discretion by misusing SPLOST funds.

With regard to the change in location and size of the civic center, we determined that the Floyd County Board abused its discretion for several reasons: (1) the architectural plans for the civic center showed that the original site was suitable for building, despite the Floyd County Board's concern that it was in a flood plain; (2) the majority of the $2.5 million spent to develop the original site would be wasted if the civic center were moved, as all of the plans were site-specific; and (3) "there might never be funds with which to build the contemplated complex if the site . . . is changed, and substantial sums of SPLOST monies expended, following each election of members to the Board." *Dickey*, supra at 455 (1). For these reasons, we affirmed the trial court's order requiring the Floyd County Board to proceed with the construction of the civic center at the original site. Therefore, because the prior Floyd County Board had chosen a suitable site and had already spent a very large amount of unrecoverable funds on that site, the subsequent Floyd County Board could not wholly abandon the original plans simply out of a personal preference to do so.

On the other hand, with regard to the purchase of a second parcel of land to construct the proposed softball complex, we reversed the trial court's finding that the Floyd County Board was required to

build the complex on the original site. We found that, in this matter, the Floyd County Board had not abused its discretion because: (1) although the original site was more centrally located, it would be very expensive to grade; and (2) "it [was] not apparent from the record . . . that the Board . . . ever voted to abandon the original site of the softball complex." *Dickey*, supra at 455 (2). In other words, because the Floyd County Board had only considered abandonment and no actual abandonment of the project had occurred, the Floyd County Board had not abused its discretion.

Then, in a more general sense, we considered the interaction of OCGA § 48-8-121 (a) (1), which provides that SPLOST tax proceeds shall be used "exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax," and OCGA § 48-8-121 (a) (2), which requires the governmental authority receiving SPLOST tax proceeds to "maintain a record of each and every project for which the proceeds of the tax are used."[8] We then expounded:

> Construing these Code sections, we hold that the Board is not authorized to use proceeds from the SPLOST tax for a purpose entirely different from that contained in the SPLOST budget and account reports. We further hold that the Board is bound by the SPLOST budget and account reports to complete all projects listed therein unless circumstances arise which dictate that projects which initially seemed feasible are no longer so. *In this regard the governing authority has discretion to make adjustments in the plans for these projects, but may not abandon the projects altogether.*

(Emphasis supplied.) *Dickey*, supra at 456. Thus, *Dickey* stands for the proposition that a governmental entity may not simply choose to wholly abandon projects set forth in the required SPLOST budget and account reports required under OCGA § 48-8-121 (a) (2). On the other hand, a governmental entity is explicitly allowed to modify the plans for its SPLOST projects at its discretion, including budget alterations made necessary by changing circumstances.

We next considered the direct implications of *Dickey* in *Thornton*, supra. In *Thornton*, Clarke County voters approved a SPLOST tax for the stated purpose of, among other things, "provid[ing] funds to pay the cost of acquiring, constructing and equipping a new Cedar Shoals

---

[8] In addition, "[a] schedule shall be included in each annual audit which shows for each such project the original estimated cost, the current estimated cost if it is not the original estimated cost, amounts expended in prior years, and amounts expended in the current year." OCGA § 48-8-121 (a) (2).

High School." Id. at 634. Prior to the vote on the referendum, the Clarke County School District held public meetings in which it advised the public that "the estimated cost of a new high school would be $18 million, and that one option included demolishing the existing high school and building a new one on the same campus." Id. A taxpayer later challenged the School District, contending that it was not authorized by the referendum to either demolish an existing school or exceed the published budget estimate of $18 million to construct a new high school. We held:

> The referendum authorizing the school projects contained a maximum dollar amount that could be raised by the one percent sales tax, but did not itemize an amount to be spent on each project. While the referendum addressed neither the $18 million for construction of a new high school, nor plans for the existing high school, these matters were discussed by school board members at public meetings. Because none of the school board's plans violates the referendum, we find no violation of law or an abuse of discretion if the school board were to demolish the existing high school or to spend more than the estimated $18 million for construction of a new school.

Id. at 635-636 (2). Importantly, we also held that, unlike situations where a governmental entity issues revenue bonds under OCGA § 36-82-1 (d), governmental entities raising a SPLOST tax are not required to adhere to prior statements of intention regarding the use of the funds because "the constitutional provision authorizing [such a] referendum does not contain a similar provision regarding adherence to statements of intentions." Id. at 636. Accordingly, in *Thornton*, the Clarke County School District was not held to the budget estimates it circulated prior to the referendum, and, in its discretion, it was allowed to modify its budget and spend more than this estimate so long as the underlying project was not completely abandoned.

Read together, *Dickey* and *Thornton* set forth a specific jurisprudential framework for considering a taxpayer's claim that a governmental entity is misusing or misdirecting SPLOST tax proceeds. At the most general level, the legal determination must be made whether the governmental entity clearly abused its broad discretion in determining the manner in which public funds are allocated and disbursed. *Powell v. Studsill*, 264 Ga. 109 (2) (441 SE2d 52) (1994). In turn, this legal determination may be resolved based on three major underlying factual determinations. First, it must be determined whether the governmental entity is using SPLOST funds "exclusively for the purpose or purposes specified in the resolution or ordinance

calling for the imposition of the tax." OCGA § 48-8-121 (a) (1). If not, an abuse of discretion has occurred, and the consideration need go no further. Second, it must be determined whether the governmental entity has decided to use SPLOST proceeds for one of the purposes or projects set forth in the SPLOST budget and accounts required under OCGA § 48-8-121 (a) (2) or if it is disbursing funds for a purpose "entirely different" from the budgeted purposes. *Dickey*, supra at 456 (4). In making this determination, only the statutorily-required budget and accounting should be considered, as governmental entities raising a SPLOST tax are not bound by statements of intention issued prior to the referendum, such as statements made in fliers, pamphlets, and the like. *Thornton*, supra at 636 (2). Again, if SPLOST funds are being used for improper purposes, an abuse of discretion results. Third, it must be determined whether there is explicit evidence of record that the governmental entity has officially voted to completely abandon a project listed on its statutorily-required budget or accounting, despite the fact that the project remains feasible. *Dickey*, supra. Such an overt act of abandonment without good cause would constitute an abuse of discretion.[9]

Upon the application of this legal rubric to the facts of this case, it simply cannot be said that the Cobb County Board abused its discretion by allocating SPLOST proceeds to a small pilot project of its Power to Learn initiative.[10] First, the SPLOST resolution listed as one of its purposes to make "system-wide technology improvements, including, but not limited to: acquisition and installation of instructional technology and information systems hardware and associated hardware at all schools and selected other facilities," and the referendum, itself, indicated that it was raising funds for "new schools, land, additions, renovations, equipment, and technology systems." In turn, the goal of the Power to Learn initiative is to provide technology systems in the form of laptop computers to all middle and high school students in the Cobb County School District. The Power to Learn initiative, therefore, clearly falls within the explicit purposes set forth in both the resolution and the referendum to provide technology systems to all schools, and the Cobb County Board cannot be said to have abused its discretion on this basis.

In addition, the use of SPLOST funds for the Power to Learn pilot program also comports with the purposes and projects set forth in the budget and accounting prepared by the Cobb County Board in

---

[9] In addition, one may also consider whether the governmental entity's decision to redirect SPLOST funds will result in excessive waste of previously disbursed SPLOST funds. If such excessive waste results, an abuse of discretion may have occurred.

[10] The Cobb County Board has approved only a pilot program at four high schools. No decisions have been reached regarding whether the program will be expanded in the future.

accordance with OCGA § 48-8-121 (a) (2). That budget includes a stated project to "refresh obsolete workstations." Cobb County Board members testified that they carefully chose the term "refresh" in this instance because it encompassed their goal of replacing some computers while merely updating or salvaging other units. Again, the Power to Learn initiative fosters this stated purpose, and it cannot logically be said to serve an "entirely different" purpose, as the provision of laptop computers is certainly a step towards the stated goal of refreshing obsolete workstations within the school system. Moreover, both statutory authority and case law make it clear that the Cobb County Board is not bound by any statements of intention issued prior to the approval of the referendum which are not contained in the resolution, the referendum, or the statutorily-required budget and accounting. As such, one cannot viably argue that the Cobb County Board abused its discretion in this matter because the Power to Learn initiative is entirely different from speculative and unofficial purposes, projects, and representations made in other informational documents and pamphlets circulated prior to the SPLOST tax's approval. Giving credence to such an argument would be tantamount to judicially rewriting the constitutional provisions authorizing SPLOST taxes to require adherence to statements of intention. This overreaching would at once contravene the state constitution, the statutory requirements of OCGA § 48-8-121, and our previous discussion of this issue in *Thornton*. Accordingly, the Cobb County Board cannot be determined to have abused its discretion for failing to follow the purposes and projects set forth in its OCGA § 48-8-121 (a) (2) budget and accounting.

Furthermore, the record indicates that the Cobb County Board has not affirmatively voted to abandon any of the projects or purposes set forth in the resolution, the referendum, or the budget. To the contrary, the Cobb County Board maintains that it intends to fulfill each and every one of these projects and purposes. Cobb County Board members explained, however, that due to the changing nature, price, and availability of technology such as laptop computers and wireless network hardware and software, the price and scope of each technology project could not remain static. The discretion to make such adjustments in the plans for SPLOST projects and their budgets is explicitly allowed in both *Dickey* and *Thornton*. Although both of these cases indicate that a project cannot be wholly abandoned, they do not mandate that the scope and budget for a project cannot be increased or decreased as circumstances might require.[11] Therefore,

---

[11] Evidence showed that the SPLOST technology budget was drawn up years before the Cobb County Board actually planned to purchase technology equipment. If the Cobb County

as "it is not apparent from the record . . . that the [Cobb County] Board . . . ever voted to abandon" any of the original projects or purposes to which it is properly bound, it cannot be said that the Cobb County Board abused its discretion. *Dickey*, supra at 456 (2). Finally, there is no indication that the pilot project of the Power to Learn initiative will cause the excessive waste of previously disbursed SPLOST funds.

Therefore, application of the clear statutory mandates and case law to the proper facts and evidence of record require a ruling that, in this case, the Cobb County Board did not abuse its broad discretion in its decision regarding the allocation of SPLOST proceeds to the pilot program of the Power to Learn initiative. As such, the trial court erred by finding that an abuse of discretion did, in fact, occur, and, for all of the reasons set forth above, that ruling should be reversed.

I am authorized to state that Chief Justice Sears concurs in this dissent.

DECIDED JUNE 12, 2006.

*Brock, Clay & Calhoun, Carlton L. Kell, Carol A. Callaway*, for appellants.
*Roy E. Barnes, Allison B. Salter, John F. Salter, Jr.*, for appellee.

---

Board were not given the discretion to alter this budget, it could lead to the absurd result that it would be required to buy outdated computer equipment simply because the Cobb County Board necessarily had to complete its budget estimate based on devices which were extant at that time.