## A98A0856. GRIER v. BROGDON.
(505 SE2d 512)

BEASLEY, Judge.

In December 1989 J. C. Brogdon agreed to sell Harold Grier land "contingent upon the purchaser obtaining satisfactory financing. The responsibility for arranging such financing is assumed by the purchaser, and in the event that this transaction is not closed as stated, earnest money [$20,000] shall be returned to purchaser in full and this contract shall be deemed null and void. . . ." Grier made sporadic preliminary efforts at obtaining financing. Grier alleged, but did not present evidence, that in February 1992 a bank holding a security deed on the property foreclosed and that Brogdon immediately reacquired the property from the bank and then entered into a contract to sell the property to a third party.

Grier sued Brogdon for specific performance or in the alternative for damages for breach of contract and for the earnest money. The specific performance demand was dropped in June 1993 when Grier canceled his notice of lis pendens in exchange for $50,000, apparently so the third-party sale could close. During the jury trial in April 1997, Grier admitted he had never obtained financing nor tendered any purchase money to Brogdon. Following the presentation of Grier's evidence, the court directed a verdict against Grier, which he appeals.

1. A directed verdict is proper where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict.[1]

A directed verdict as to breach of contract was proper in part. The financing contingency provision imposed a good-faith duty on Grier to diligently seek to obtain financing.[2] Because time was not specified, other than the "proposed closing date" was to be 90 days after Grier obtained a firm commitment for financing, performance was required to be completed within a reasonable time.[3] It was unreasonable as a matter of law for Grier not to obtain financing for seven and one-half years from December 1989 until April 1997, during which time (based on his evidence) the property was available to him. Grier presented no evidence that financing was even possible. He presented no legal excuse for failing to achieve financing.

The financing contingency created "a condition precedent to the

---

[1] OCGA § 9-11-50 (a); *Roberts v. Chapman*, 228 Ga. App. 365, 366 (1) (492 SE2d 244) (1997).

[2] *Brack v. Brownlee*, 246 Ga. 818, 819 (273 SE2d 390) (1980); see *Century 21 Mary Carr & Assoc. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992); *Koets, Inc. v. Benveniste*, 169 Ga. App. 352, 354 (2) (312 SE2d 846) (1983), aff'd, 252 Ga. 520 (314 SE2d 912) (1984).

[3] OCGA § 13-4-20; see *Ferguson v. Bank of Dawson*, 57 Ga. App. 639, 640 (2) (196 SE 195) (1938).

performance of the primary contractual obligations to buy and sell the property. . . . It is reasonable to hold that the obtaining of the loan was a condition precedent to the duty of both parties to render their promised performances (and not a condition precedent to the existence of a valid contract)."[4] "A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party."[5] "[U]ntil compliance with this condition precedent the contract is not enforceable."[6]

Brogdon's obligation to sell never having matured, Grier's claim for breach of contract damages in this regard failed as a matter of law.

2. Nevertheless, Grier was entitled to a return of his earnest money. Where a financing contingency is not fulfilled, "the terms of the contract and the intentions of the parties in a particular case will be determinative of the disposition of the earnest money."[7]

The preprinted form contract provided that if the sale did not close due to purchaser's default, the earnest money was to be applied toward seller's damages caused by the default. The contract then stated, in the preprinted portion, that "[t]he following special stipulations shall, if conflicting with the printed matter, control." A typed "special stipulation" stated: "It is agreed and understood by all parties that this agreement is contingent upon the purchaser obtaining satisfactory financing. The responsibility for arranging such financing is assumed by the purchaser, and in the event that this transaction is not closed as stated, earnest money shall be returned to purchaser in full and this contract shall be deemed null and void and both parties shall be considered to be back in same condition as though no contract was entered into." The special stipulations page was initialed by the parties.

An issue of contract construction is at the outset a question of law for the court[8] to be resolved by a three-step process. "The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity."[9]

Application of the first step provides the answer. Although the

---

[4] (Citations and punctuation omitted.) *Brack*, supra, 246 Ga. at 822.

[5] OCGA § 13-3-4.

[6] *Parker v. Averett*, 114 Ga. App. 401, 402 (2) (151 SE2d 475) (1966); see *Panfel v. Boyd*, 187 Ga. App. 639, 645 (3) (371 SE2d 222) (1988).

[7] *Brack*, supra, 246 Ga. at 822.

[8] *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986).

[9] (Citation omitted.) *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986).

provisions concerning the disposition of earnest money in the event of Grier's default conflict, ambiguity evaporates due to the express provision that in the event of a conflict, the stipulations control. Even going beyond the contract's own terms, the applicable rule of construction is that "[a] typewritten provision must govern over a conflicting printed one."[10] Thus, the tailored stipulation for return of earnest money absent a closing, which refund was not contingent on the seeking of financing in good faith, governs as a matter of law.

Brogdon posits that under such a construction Grier would have given no consideration for the contract. *Brack v. Brownlee*[11] rejected this position, holding that "the payment of money by the purchasers [though returnable on failure of the financing contingency] and the vendors' promise to sell provided adequate consideration for their contract."

The court erred in directing a verdict against Grier on his claim for the earnest money. We reverse this portion of the directed verdict and remand the case for proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part and case remanded. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 4, 1998 —
RECONSIDERATION DENIED AUGUST 21, 1998 —

*Giddens, Davidson & Mitchell, Earl A. Davidson*, for appellant.
*Thompson & Sweeny, Virgil L. Thompson, Jr., Jorgia C. Northrup, Glenn P. Stephens*, for appellee.

---

[10] *Quinlan v. Bell*, 189 Ga. App. 8, 9 (374 SE2d 823) (1988); see OCGA § 13-2-2 (7); *Williams v. Physicians &c. Hosp.*, 249 Ga. 588, 591 (292 SE2d 705) (1982) ("where a contract is partly printed and partly handwritten or typed, the written or typed portions are to be given greater weight in construing the parties' intent") (citations omitted); *Westminster Group v. Perimeter 400 Partners*, 218 Ga. App. 293, 294 (1) (460 SE2d 827) (1995) ("typewritten provision must govern over a conflicting printed one") (citation and punctuation omitted).
[11] 246 Ga. at 819.