## A01A2508. BARROW COUNTY AIRPORT AUTHORITY v. ROMANAIR, INC.
### (563 SE2d 467)

BARNES, Judge.

The Barrow County Airport Authority appeals the trial court's order interpreting its lease with Romanair, Inc., enjoining the Authority from collecting any more monthly rent than it collected before September 1, 2000, declaring that the Authority could not increase the rent until the next change date and requiring the Authority to act before the change date if it wanted to increase the rent. The court further declared that any increase in rent could not exceed the amount of rent charged in the month preceding the change date by more than 30 percent.

The Authority contends the trial court erred by failing to find that the lease provides for automatic rental adjustments based on increases in the Consumer Price Index ("CPI") on the change date; erred by holding that the lease requires action by the Authority to adjust the rent on the change date; erred by granting an injunction preventing the Authority from ever collecting any greater rental than was collected in the month preceding September 1, 2000; erred by declaring that the Authority cannot adjust the rent for a five-year period beginning on a change date without taking action before the change date; and erred by declaring that any change in the amount of rent charged cannot exceed the previous amount charged by more than 30 percent. Although we affirm the trial court's limitation on the increase in the amount of rent, for the reasons stated below, we must reverse the trial court and remand the case for further proceedings.

This appeal concerns the construction of a lease between the Authority and Romanair at the Barrow County Airport. The lease allowed Romanair to sell fuel at the airport in return for a minimum payment plus an additional rent payment based upon the amount of

fuel sold in the preceding month. The lease provides that Romanair promises to pay a monthly rental of $400 per month plus an additional rental of three cents per gallon of fuel and gasoline sold by Romanair in the preceding month.

The lease also contains the following provision for adjusting the monthly rental:

> The monthly rental *shall be subject to adjustment* at the beginning of each five year period commencing September 1, 1990 (hereinafter the change date) as follows: [Romanair] shall pay the Authority as increased rent such percentage of the basic rent as is proportionate to the change, if any, in the National Consumer Price Index as published by the United States Bureau of Labor [Statistics] from its level on the date of this agreement and its level on the change date. This rental adjustment *shall be due* each month during the subsequent five (5) year term until the rent is readjusted at the next change date. It is agreed by the parties that the rental adjustment shall not be changed by more than thirty percent (30%) from the rental amount for the month immediately preceding the change date. That the minimum monthly rental in any year shall be Three Hundred Dollars ($300.00) per month plus two cents per gallon of gasoline fuel sold by [Romanair].

(Emphasis supplied.)

Apparently, no adjustments to the price per gallon charge in the lease were made or attempted between 1985, when the lease was signed, and March 27, 2001, when the Authority imposed a rent adjustment, effective April 1, 2001, increasing the charge from three cents to five cents per gallon. Romanair objected to the increase and filed this action for declaratory judgment and injunctive relief. Romanair asserted that the lease did not give the Authority the authority to impose the adjustment because the lease only allowed adjustments at the beginning of each five-year period and that the sixty-six percent adjustment from three to five cents per gallon violated the provision in the lease limiting adjustments to no more than thirty percent of the previous rental amount.

The Authority contended, however, that the adjustment was authorized. The Authority relied upon paragraph 25 of the lease:

> No failure of [the] Authority to exercise any power given [the] Authority hereunder, or to insist upon strict compliance by [Romanair] of any obligation hereunder, and no custom or practice of the parties at variance with the terms

hereof shall constitute a waiver of [the] Authority's right to demand exact compliance with the terms hereof.

The parties submitted a joint stipulation of facts, and after argument, the trial court ruled that, contrary to the Authority's position, the lease did not provide for an automatic adjustment to the rent at the beginning of each five-year period. The court found that under the lease clause providing that the rent "shall be subject to adjustment" was not mandatory and self-executing and that the lease required action by the Authority to adjust the rent. Consequently, the court ruled that Romanair was entitled to an injunction "preventing [the Authority] from collecting any more rental than that collected for the month preceding September 1, 2000." The court further declared that "the Authority may not make changes for a five-year period beginning on a change date unless the Authority acts prior to the change date" to adjust the rent and further declared that "such changes may not exceed the amount of rent charged in the month preceding the change date by more than 30%."

1. Even though this appeal concerns the grant of a permanent injunction, we have appellate jurisdiction because the grant of such relief in this case was merely ancillary to the underlying legal issue of interpreting the lease. *Beauchamp v. Knight*, 261 Ga. 608, 609 (409 SE2d 208) (1991).

2. In reviewing the trial court's decision, we are guided by the following principles:

> "An issue of contract construction is at the outset a question of law for the court." *Grier v. Brogdon*, 234 Ga. App. 79, 80 (2) (505 SE2d 512) (1998). The first step is to look to the four corners of the instrument to determine the meaning of the agreement from the language employed. *Terry v. State Farm &c. Ins. Co.*, 269 Ga. 777, 778-779 (2) (504 SE2d 194) (1998). If the contract language is ambiguous, however, then the court must apply the applicable rules of construction. *Grier v. Brogdon*, 234 Ga. App. at 80; OCGA § 13-2-2. "The cardinal rule of contract construction is to ascertain the intention of the parties." (Punctuation omitted.) *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. 240, 242 (1) (503 SE2d 877) (1998); OCGA § 13-2-3. If, after applying the rules of construction, the language remains ambiguous, then the finder of fact must resolve the ambiguity. See id.

*Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 344 (1) (c) (537 SE2d 397) (2000), vacated on other grounds, *Time Warner Entertainment Co. v. Six Flags Over Ga.*, ___ U. S. ___ (122 SC 24, 151 LE2d 1) (2001).

3. Applying the foregoing standards, we find that the trial court properly construed the lease to limit any increase in the rent to no more than 30 percent of the previous payment, to find that the lease requires action by the Authority to increase the rent, and to find that the phrase "shall be subject to adjustment" is not mandatory or self-executing. The lease does not say that the rent "shall" be adjusted; instead, the lease merely provides that it "shall be subject to adjustment." Further, we reject the Authority's argument that its failure to adjust the rent previously allows it to increase the rent more than 30 percent. This limitation is clearly for the benefit of Romanair, and the Authority has no power to waive this clause. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989).

4. We also find, however, that the trial court erred by interpreting the lease to require that the Authority adjust the rent *before the beginning* of each five-year period commencing September 1, 1990 ("the change date"), as specified in the lease. Such an interpretation is contrary to the lease provision that the rent "shall be subject to adjustment *at the beginning* of each five year period. . . ." When given its plain and customary meaning (OCGA § 13-2-2 (2)), the phrase "at the beginning of each five-year period" can only mean that the rent is subject to adjustment after the change date during the start of the new five-year period, and not before. In this sense, "beginning" means: "The act or process of bringing or being brought into being; start. The time when something begins or is begun. . . . The first part," and "begin" is defined as "[t]o start to do something; commence." See American Heritage Dictionary (Houghton Mifflin Co. 2nd college ed. 1985). When interpreting contracts, dictionaries may supply the plain and ordinary sense of words. *Southern Guaranty Ins. Co. v. Duncan*, 131 Ga. App. 761, 764 (2) (206 SE2d 672) (1974).

Moreover, if the trial court's interpretation of the lease is followed, the rent could never be adjusted. The lease requires that a comparison of the CPI on the prior change date be made with the CPI on the current change date. The CPI for a particular date, however, is calculated after that date. Under the trial court's interpretation demanding that the Authority make the adjustment before the current change date, the adjustment could never be timely imposed.

Such an interpretation cannot stand as it is clearly contrary to the intent of the parties as expressed in the contract clause permitting an adjustment to the rent. When construing a contract, we must look to the whole contract to determine the construction of any particular part. OCGA § 13-2-2 (4); *Western Contracting Corp. v. State Hwy. Dept.*, 125 Ga. App. 376, 381 (1) (187 SE2d 690) (1972). Accordingly, we must apply the well-established rule that "a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. [Cits.]" *Bd. of Regents &c. of*

*Ga. v. A.B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987). Therefore, we find that the rent may be adjusted by the Authority after a change date at the beginning of a new rent period. Accordingly, the trial court's grant of a permanent injunction preventing the Authority from collecting any more rent than that collected before September 1, 2000, must be reversed.

5. We reject the Authority's argument that the anti-waiver savings clause in paragraph 25 of the lease, quoted above, allows the Authority to adjust the rent at any time. Paragraph 3 of the lease allowing an adjustment to the rent certainly grants a right to the Authority, but at the same time the paragraph limits the period in which such adjustments can be made to "the beginning of each five-year period." This second clause is a right vested in both parties, and paragraph 25 does not grant to the Authority the power to waive a right vested in Romanair. A party to a contract cannot waive provisions in favor of the other party or waive rights to which the other party is entitled. *Kusuma*, supra, 191 Ga. App. at 257.

6. In this instance, however, we cannot determine as a matter of law whether the adjustment by the Authority was made "at the beginning" of the five-year period within the terms of the lease. In contracts, time is generally not of the essence, and we do not find that the parties made it so in this instance. See OCGA § 13-2-2 (9). Further, the lease does not provide a specific or definite period in which the rent must be adjusted. Under these circumstances, we presume that the parties intended the rent to be adjusted within a reasonable time of the beginning of the five-year period. *Parker v. Futures Unlimited*, 157 Ga. App. 520, 521 (278 SE2d 99) (1981).

Therefore, we must remand the case to the trial court to resolve this issue because we cannot determine from the record before us, as a matter of law, whether the Authority adjusted the rent within a reasonable time of the beginning of the five-year period.

*Judgment affirmed in part, reversed in part and remanded. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 20, 2002 —
RECONSIDERATION DENIED APRIL 4, 2002.

*James E. Palmour III*, for appellant.
*Morton M. Wiggins III*, for appellee.