S07A1512. HICKS et al. v. KHOURY et al.
(658 SE2d 616)

HUNSTEIN, Presiding Justice.

On September 21, 1999, Peach County voters passed the following Special Local Option Sales Tax (SPLOST) referendum, offered pursuant to a July 27, 1999 resolution of the Peach County Board of Commissioners:

> Shall a special 1 percent sales and use tax be imposed in Peach County for a period of time not to exceed 5 years and for the raising of not more than $12,000,000.00 for the purpose of a capital outlay project or projects which will be owned or operated or both by the County and one or more municipalities in the County or any combination thereof to construct future water, sewer and waste water lines and treatment facilities for the use and benefit of the citizen's [sic] of both the incorporated and unincorporated areas of Peach County?

The $12 million was raised, but has not been spent. On January 2, 2007, appellants Ira Hicks, Melvin Walker and Geoffrey Ibim, acting individually and as representatives of unincorporated association Concerned Citizens for Good Government, filed a petition for mandamus, injunctive relief and attorney's fees against the current members of the Peach County Board of Commissioners, alleging that the allocation of the SPLOST funds set forth in an intergovernmental agreement executed in 2006 is inconsistent with the purpose approved by the voters.[1] The trial court denied the relief sought in the petition and this appeal ensued.

Prior to the 1999 resolution, the Board had charged the Peach County Water and Sewer Authority with developing a long-term plan to address the water, sewer, and waste water needs of Peach County. An engineering firm hired by the Authority proposed a countywide system utilizing a centralized waste water treatment plant; the system would be put in place over a period of at least 20 years at a cost of approximately $80 million in 1999 dollars. A decision was made to begin with the first phase of the plan, which included construction of the centralized waste water plant in east Peach County and connection of the Cities of Fort Valley and Byron to this facility over a period of five years. The $12 million in SPLOST funds sought by the Board was an estimate of the amount that could be raised by a one percent

---

[1] Appellants own land in unincorporated southwest Peach County; Hicks is the former chair of the Peach County Board of Commissioners, Walker is the former chair of the Peach County Water and Sewer Authority, and Ibim is a former member of the Authority.

tax based on historical sales figures, and was not related to the cost of this project. Appellants acknowledge that the funds were considered to be "seed money" that would be insufficient to cover even the first phase of the long-term plan.

Simultaneously with the Board's adoption of the July 27, 1999 resolution, the Board, the Authority, the City of Fort Valley, and the Fort Valley Utility Commission signed an intergovernmental agreement to use the SPLOST funds in accordance with the proposed plan, specifically referencing the construction of the centralized waste water treatment plant and connection of Fort Valley and Byron to this facility. It is uncontroverted that the City of Byron never signed the agreement. After the SPLOST funds had been raised, an amended agreement was executed by all entities, including the City of Byron, pursuant to which the County's waste water treatment needs would be handled by an upgraded Fort Valley facility, which had come into compliance with Environmental Protection Division parameters since the passage of the SPLOST, and by a new facility to be constructed in Byron. The Fort Valley project was allocated $3.5 million; $4.5 million was allocated for building the new Byron facility; and the remaining $4 million in SPLOST funds and approximately $1.5 million in interest remain unallocated.

1. Appellants contend that the trial court erred by denying their petition for mandamus because appellees failed to faithfully perform their official duties as Peach County Commissioners, see OCGA § 9-6-20, when they entered into an amended intergovernmental agreement that did not allocate funds for water and sewer facilities in unincorporated areas of the County, specifically southwest Peach County. We disagree. The $12 million raised by the SPLOST and allocated in the amended agreement was known to be insufficient to cover the cost of upgrading the County's existing system of waste water treatment, and these upgrades were required before any new water or sewer lines could be put in place. Thus, although adding infrastructure in southwest Peach County may have been one project to be completed in meeting the ultimate goal of a countywide water and sewer system, it was never intended to be accomplished with the SPLOST funds at issue here. Appellants' argument that the amended agreement benefits only the incorporated areas of the County, namely, Fort Valley and Byron, ignores the facts that these municipalities already serve some customers in unincorporated areas and that they have plans to eventually serve the entire County. In addition, a portion of the interest earned on the SPLOST funds has been spent to address sewerage issues in the area of Gano, which is partially unincorporated.

"The law grants to a county commission a broad discretion to exercise control over public property, [cit.], and dictates that this

discretion will not be interfered with by the courts absent clear abuse. [Cits.]" *Dickey v. Storey*, 262 Ga. 452, 454 (423 SE2d 650) (1992). Here, the Board is required to use the proceeds from the SPLOST "exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax," OCGA § 48-8-121 (a) (1), i.e., to construct water, sewer, and waste water lines and facilities for the benefit of the citizens of both incorporated and unincorporated areas of Peach County. The allocation of funds in the amended intergovernmental agreement is not inconsistent with this purpose, but merely seeks to accomplish the same end set forth in the first intergovernmental agreement, namely, an extension of water and sewer service throughout Peach County, via different means. Execution of the centralized waste water treatment plan set forth in the first intergovernmental agreement was never possible, either technically or economically, without the participation of the City of Byron.

This case is distinguishable from both *Dickey*, supra, 262 Ga. at 452, and *Johnstone v. Thompson*, 280 Ga. 611 (631 SE2d 650) (2006), cases in which we found petitioners entitled to mandamus relief due to improper use of SPLOST funds. In *Dickey*, supra, we held that the county commission abused its discretion in attempting to relocate the site of a proposed government office and civic center complex after almost 20 percent of the budget for the project had already been spent to purchase the original site and engage in preparatory work, id. at 454-455 (1), and that the commission was not authorized to use SPLOST proceeds for a purpose entirely different from that contained in the SPLOST budget and account reports. Id. at 455-456 (3). Here, however, no SPLOST funds have been spent on purchasing or preparing a site for a centralized waste water treatment facility, and there are no budget and account reports to which the Board can be held because no action has been taken to construct such a facility. In *Johnstone*, supra, we analogized a notebook, prepared by the school board and presented to the public in support of the SPLOST referendum, to the budget and account reports in *Dickey*, and held that the board was bound to expend funds only for the projects enumerated therein because the general referendum and ballot language referred to such projects. Id. at 613. Here, the record contains several documents made available to the public in support of the SPLOST. Pretermitting whether the Board was bound by these promotional materials when it was not involved in their development or dissemination, appellants have failed to show that any voter relied upon representations made therein in passing the SPLOST referendum.[2]

---

[2] Similarly, appellants have failed to show voter reliance on the first intergovernmental agreement.

" 'Mandamus will issue only where the petitioner has demonstrated a clear legal right or a gross abuse of discretion. (Cit.)' [Cit.]" *Johnstone*, supra, 280 Ga. at 614. As appellants have failed to make such a showing, the trial court properly found that they are not entitled to mandamus relief.[3]

2. Appellants' argument that the trial court erred by denying their petition for a permanent injunction to supplement mandamus has no merit because, as set forth in Division 1, appellees' actions associated with the amended intergovernmental agreement were not illegal or contrary to equity. See OCGA § 9-5-1.

3. Appellants' argument that the trial court erred by denying their petition for litigation expenses pursuant to OCGA § 13-6-11 must fail because there is no evidence that appellees have acted in bad faith, been stubbornly litigious, or caused appellants unnecessary trouble and expense.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 10, 2008 —
RECONSIDERATION DENIED APRIL 11, 2008.

*Edwards & Youmas, Lonzy F. Edwards*, for appellants.
*Culpepper & Liipfert, Charles J. Liipfert*, for appellees.

---

[3] We note that because a significant portion of the collected funds remain unallocated under the amended agreement, appellants have not necessarily been foreclosed from obtaining the results they seek.