A08A0759. ROTHSCHILD et al. v. COLUMBUS CONSOLIDATED GOVERNMENT et al.

(662 SE2d 167)

BARNES, Chief Judge.

Several residents of Muscogee County, Georgia sued the Columbus Consolidated Government, the Muscogee County School District, and the Muscogee County Library Board (collectively, "the defendants") for equitable relief, seeking to halt the defendants' expenditure of funds generated through a Special Purpose Local Option Sales Tax ("SPLOST"). Following an evidentiary hearing, the trial court determined that the residents lacked standing to bring suit and dismissed the complaint. For reasons that follow, we affirm.

The record shows that in 1999, the defendants sought SPLOST funds to build a new public library on the site of an old shopping mall in Muscogee County. A task force was created to campaign for the SPLOST, which had to be approved by voters, and information was distributed to Muscogee County citizens about the proposed library and SPLOST funding. That information included an architectural rendering of the future library, which showed an extensive park-like space behind the building. The rendering was displayed at numerous public meetings and placed in brochures. A local newspaper also published the picture, noting that it depicted what the library "might look like," but that the facility's design would be finalized if and when voters approved the SPLOST.

In addition, task force committee members who attended public SPLOST meetings were given a list of answers to possible questions that might be posed by concerned citizens. One of those answers stated:

If the decision to build the library is positive, the existing mall will be removed and much of the asphalt will be torn up and in its place a green space and a park will find residence alongside the new library. The city would like to add a tag office and other facilities where citizens could purchase licenses[,] a one stop shop[,] maybe a police precinct.

Before the SPLOST vote, the project received much discussion in the local press. The newspaper printed an interview with a task force committee member, who essentially repeated the committee's prepared answers regarding the library, including the answer quoted above. A published breakdown of the costs associated with the library did not mention a park, but earmarked certain funds for "landscaping." Another newspaper article indicated that "[t]he library building, parking and green space would take up about 17 of the 40 acres on the mall property," with the remainder reserved for

future city and school use.

In an election held November 2, 1999, Muscogee County citizens voted "yes" to the following question:

> Shall a special 1 percent sales and use tax be imposed in Muscogee County for the raising of not more than $50,381,962 for the purpose of paying the costs, in part, of acquiring, constructing, and equipping a county library to be operated by the Muscogee County School Board?

Funded by the SPLOST, construction of the library commenced on the former mall site. Although the library structure was eventually completed, the area was not significantly landscaped because of a perceived lack of funds.

In 2006, however, the defendants discovered an additional $6.1 million in available SPLOST funds. The Library Board proposed using a portion of the money to landscape 23 acres behind the library, which still contained asphalt from the original mall. But when the School Board objected to this expenditure, the money was earmarked for landscaping around the building and other library projects, such as purchasing books.

Troubled by the defendants' failure to install the 23-acre park, the residents sued to halt distribution of the $6.1 million and to compel the defendants to use that money to develop the "promised park." According to the residents, the defendants abandoned a SPLOST purpose — development of a park behind the library — and abused their discretion by refusing to fund the park. Shortly after filing their complaint, the residents applied for a temporary restraining order ("TRO"), and the trial court scheduled a TRO hearing.

At the hearing, the defendants argued, among other things, that the residents lacked standing to bring their complaint because they could not demonstrate that any government official or entity had acted "ultra vires." Following extensive testimony, the trial court agreed. It found that the defendants had not promised to construct a park on the 23 acres behind the library and had acted within their authority in allocating the SPLOST funds. It thus dismissed the complaint for lack of standing.

1. The residents first argue that the trial court erred in considering the standing issue at the TRO hearing without giving them notice of the issue and "an opportunity to respond." They claim that by taking evidence, the trial court converted the defendants' standing argument into a summary judgment motion, to which they should have had 30 days to respond and develop evidence.

The record shows, however, that the residents raised no objection to the trial court's procedure. The parties argued extensively

about the standing issue, and the residents were given ample opportunity to present evidence supporting their claims. When the trial court stated at the hearing's conclusion that it had found no evidence of an ultra vires action by the defendants, the residents did not question the extent of that finding. And they raised no objection to the breadth of the dismissal order signed by the trial court. Although defense counsel drafted the order, the residents explicitly agreed to it in "form and substance."

By not objecting or otherwise questioning the procedure, the residents acquiesced in the trial court's decision to adjudicate the standing issue. They thus waived any further notice to which they might have been entitled. See *Newsome v. City of Union Point*, 249 Ga. 434, 435, n. 1 (291 SE2d 712) (1982) (30-day response time waived by claimant who failed to object to trial court's decision to convert motion to dismiss into motion for summary judgment); *Gaddis v. Chatsworth Health Care Center*, 282 Ga. App. 615, 617 (1) (639 SE2d 399) (2006) (by submitting evidence in response to motion to dismiss, claimant "in effect requested that the motion be converted into one for summary judgment and acquiesced in the trial court's decision not to give notice of the actual nature of the pending motion") (punctuation omitted).

2. In a related claim, the residents assert that the trial court prematurely required them to establish standing at the TRO hearing. As noted above, however, the trial court heard evidence and argument on the standing issue without any objection from the residents, and they never asserted below that the ruling was "premature." Accordingly, they cannot now challenge the ruling on this basis. See *Sims v. Majors*, 178 Ga. App. 679, 681 (3) (344 SE2d 501) (1986) (" 'Unless prompt objection is made to an irregularity or impropriety in the progress of a trial, when known to counsel, it will be treated as having been waived.' ").

3. The residents also argue that the trial court erred in requiring them to show that the defendants acted ultra vires to establish standing. We disagree.

A court's equitable powers may be used to restrain improper government activity. *Newsome*, supra, 249 Ga. at 436. An individual, however, may use his or her status as a citizen/taxpayer to seek such relief only if the governmental action "was beyond the power or authority of the [government] or [governmental] officer to perform under any circumstances." Id. See also *Lowry v. McDuffie*, 269 Ga. 202, 203-204 (1) (496 SE2d 727) (1998) (citizen and taxpayer has standing to challenge illegal actions by a municipality); *City of Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 539 (7) (422 SE2d 651) (1992) ("[A] taxpayer has standing to seek to enjoin the ultra vires acts of a governing authority."); *Arneson v. Bd. of Trustees*

*of the Employees' Retirement System of Ga.*, 257 Ga. 579, 580 (3) (361 SE2d 805) (1987) (citizens' standing to bring suit challenging government action is "dependent upon the correctness of their contention that the questioned actions are ultra vires").

In other words, citizen/taxpayer standing does not arise solely from dissatisfaction with a governmental act. The citizen must allege and be able to prove that the act was illegal or ultra vires. See *Newsome*, supra, 249 Ga. at 436. The trial court, therefore, used the proper framework to analyze the standing issue.

Moreover, we find no error in the trial court's ultimate determination that the residents failed to demonstrate any ultra vires action here. Under OCGA § 48-8-121 (a) (1), SPLOST funds must be used "exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax." The government entity charged with allocating these funds, however, retains "discretion to make decisions that fall within the authorization of a SPLOST referendum as long as . . . alteration[s] in its plans [do] not contravene the terms of the referendum or otherwise violate the law." (Punctuation omitted.) *Johnstone v. Thompson*, 280 Ga. 611, 612 (631 SE2d 650) (2006); see also *Hicks v. Khoury*, 283 Ga. 407, 408 (1) (658 SE2d 616) (2008) (county commissioners have broad discretion in allocating SPLOST funds).

The SPLOST resolution in this case referenced "acquisition, construction, and equipping of the Library Project," and the ballot language asked Muscogee County citizens to vote on whether a tax should be imposed "for the purpose of paying the costs, in part, of acquiring, constructing, and equipping a county library." Nothing in the stated SPLOST purposes discussed a 23-acre park. And although the project budget disseminated before the SPLOST vote included amounts for "landscaping," it did not mention a large park.

We recognize that the architectural rendering of the proposed project depicted a large area of green space behind the library building, and several pre-vote statements referred to a park "alongside" the library. But at least one newspaper article noted that the library design would be finalized *after* the SPLOST resolution passed. Furthermore, the discussion of land use was not limited to the library and a green space. Voters were also informed that the excess land might be used for additional government buildings, such as a tag office and a police station.

Simply put, the defendants never promised to build a 23-acre park behind the new library and did not designate the park as a SPLOST purpose. The record also shows that the defendants intend to use the remaining $6.1 million in SPLOST funds to landscape around the library and complete library-related projects, including

purchasing books. We fail to see how such expenditures violate a SPLOST purpose or constitute an ultra vires action by the defendants.

Undoubtedly, the residents do not agree with how the defendants have chosen to spend the final SPLOST funds. But absent some evidence that the defendants exceeded their authority, contravened the SPLOST resolution, or abandoned a SPLOST purpose, the residents cannot demonstrate any ultra vires conduct, and we will not interfere with the defendants' decision-making authority. Accordingly, the trial court did not err in dismissing the residents' complaint. See *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 635-636 (2) (514 SE2d 11) (1999) (because the school board did not abuse its discretion or violate the law, the trial court properly dismissed taxpayer's complaint challenging board's allocation of tax funds for new school construction). Compare *Johnstone*, supra, 280 Ga. at 611 (taxpayer entitled to equitable relief against school board that illegally "use[d] the SPLOST proceeds for a purpose entirely different from that contained in the SPLOST documents"); *Dickey v. Storey*, 262 Ga. 452, 454-455 (1) (423 SE2d 650) (1992) (county board of commissioners abused its discretion in abandoning portion of SPLOST project).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 25, 2008 —
RECONSIDERATION DENIED MAY 15, 2008 

*Waldrep, Mullin & Callahan, Joseph L. Waldrep, Wasson, Sours & Harris, John D. Sours, McKoon, Thomas & McKoon, Joshua R. McKoon*, for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Jorge Vega, Gregory S. Ellington, Page, Scrantom, Sprouse, Tucker & Ford, James C. Clark, Jr., Thomas F. Gristina*, for appellees.