A08A1151. ETOWAH VALLEY SPORTING CLAY PARK, LLC
v. DAWSON COUNTY.

(669 SE2d 436)

RUFFIN, Presiding Judge.

After Etowah Valley Sporting Clay Park, LLC leased land from Dawson County, the County sought to terminate the lease. Etowah Valley appeals the trial court's determination on motion for summary judgment that the County validly exercised its right of termination. Because we agree with Etowah Valley that the language of the termination clause at issue is ambiguous, we reverse.

On appeal from the grant of a motion for summary judgment, we view the evidence in a light most favorable to the nonmoving party and conduct a de novo review of the law and the evidence.[1] Summary judgment should be granted only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[2] Viewed in a light favorable to Etowah Valley, the evidence shows that in April 2005, the parties[3] entered into a 25-year lease whereby Etowah Valley would lease 150 acres from the County for

---

[1] See *Scott v. Bank of America*, 292 Ga. App. 34 (663 SE2d 386) (2008).

[2] See id.

[3] The Etowah Water & Sewer Authority was also a party to the Lease; it actually owns the subject property and leases it to the County.

the operation of a sporting clays[4] and archery course. The Lease contains the following provision:

> 22. Compliance with OCGA § 36-60-13 Or Any Amendment Thereto. This Contract shall terminate absolutely and without further obligation on the part of Dawson County at the close of the calendar year in which the Agreement is executed and at the close of each succeeding calendar [year] for which this Agreement may be renewed, but this Contract shall be automatically renewed unless positive action is taken by Dawson County to terminate such contract by providing sixty (60) days written notice to the Lessee and paying Lessee non-depreciated value of assets affixed to the realty. Title to any supplies, materials, equipment, or other personal property shall remain in the Lessee until fully paid. This Contract shall terminate immediately and absolutely at such time as appropriated and otherwise unobligated funds are no longer available to satisfy any obligation of Dawson County under the terms of this Contract. [hereinafter "Paragraph 22"]

The provisions of this paragraph generally track the language of OCGA § 36-60-13, which governs "multiyear lease, purchase, or lease purchase contracts of all kinds for the acquisition of goods, materials, real and personal property, services, and supplies" by a county or municipality.[5] The Lease contains separate provisions for the termination of the Lease by the County should Etowah Valley default on the terms of the Lease.

A year later, the County filed a complaint against Etowah Valley alleging sound-based nuisance and breach of the lease and seeking injunctive relief and eviction (the "First Action"). After a hearing, the trial court denied preliminary relief and held that "Etowah Valley's gun shooting course cannot be enjoined as a noise generating nuisance" pursuant to OCGA § 41-1-9.[6] Before filing the First Action, the County notified Etowah Valley by certified letter of its

---

[4] Sporting clays was described by one witness as "golf with a shotgun." It takes place on a course that simulates various hunting situations.

[5] The purpose of the Code section is to authorize counties and municipalities to enter into multi-year purchase contracts without running afoul of the Georgia Constitution's requirement that no political subdivision of the State incur a debt obligation extending beyond a single year. See *Bauerband v. Jackson County*, 278 Ga. 222, 223 (1) (598 SE2d 444) (2004); *Barkley v. City of Rome*, 259 Ga. 355, 355-356 (381 SE2d 34) (1989).

[6] OCGA § 41-1-9 (c) provides, in pertinent part:
No sport shooting range ... shall be subject to any action for civil or criminal liability, damages, abatement, or injunctive relief resulting from or relating to noise

intent to invoke Paragraph 22 of the Lease and to terminate the lease as of December 31, 2006. On October 25, 2006, the County confirmed in writing its intent to terminate the lease and sent Etowah Valley a check in the amount of $336,000, which it claimed "represents the non-depreciated value of assets affixed to the realty as set forth in the enclosed appraisal analysis." Etowah Valley returned the check to the County. In January 2007, the County brought a dispossessory action against Etowah Valley based on its right of termination under Paragraph 22 of the Lease (the "Second Action").

The County moved for summary judgment in both the First and Second Actions, and the two cases were consolidated. Etowah Valley then filed a cross-motion for summary judgment. The trial court issued two orders on the cross-motions for summary judgment. In the first order, the trial court held that Etowah Valley had not breached the Lease and that the County "is not entitled to terminate the agreement based on its claim that [Etowah Valley's] use of the premises constitutes a nuisance as a matter of law." In the second order, which is the subject of this appeal, the trial court concluded that the County had, however, validly exercised its right under Paragraph 22 to terminate the Lease effective December 31, 2006 by providing 60 days' notice and paying the nondepreciated value of any assets affixed to the property. But the trial court found that the amount tendered as the nondepreciated value of the assets was inadequate and provided that the appropriate amount would be determined by a special master or jury trial if the parties were unable to agree.

On appeal, Etowah Valley argues that: (1) the termination provision in Paragraph 22 is simply inapplicable under these circumstances; (2) if Paragraph 22 is applicable, the County did not validly exercise its right of termination because the amount tendered was inadequate; and (3) genuine issues of material fact exist as to whether the County violated its contractual duty of good faith and fair dealing by invoking the termination provision.

1. The trial court based its grant of summary judgment on a finding that Paragraph 22 was not ambiguous and afforded the County a right of termination. Etowah Valley contends, however, that Paragraph 22 was included in the Lease only to comply with OCGA § 36-60-13 in the event it became applicable and was not intended to create what Etowah Valley terms "extraordinary rights of termination" for the County. Etowah Valley argues that the

---

generated by the operation of the range if the range remains in compliance with noise control or nuisance abatement rules, regulations, statutes, or ordinances applicable to the range on the date on which it commenced operation.
See *Jenkins v. Clayton*, 273 Ga. 439 (542 SE2d 503) (2001).

heading of Paragraph 22 — "Compliance with OCGA § 36-60-13 Or Any Amendment Thereto" — establishes that the terms of this paragraph were enforceable only if OCGA § 36-60-13 applied to the Lease, and it did not in this instance. Because we find the language of Paragraph 22 to be ambiguous as to whether it is applicable under these circumstances, we reverse the grant of summary judgment.

(a) "[T]he cardinal rule of contract construction is to ascertain the intention of the parties."[7] Contract construction is generally a question of law for the court, involving three steps:

> first, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[8]

Language is ambiguous "when it is of uncertain meaning and may be fairly understood in more ways than one."[9] Here, the contract language is ambiguous. Because there are other provisions governing termination of the Lease in the case of a default, and because the paragraph heading indicates that its purpose is compliance with a specific statute, it is unclear whether the parties intended Paragraph 22 to apply generally to the Lease or only in the event that OCGA § 36-60-13 became applicable.

Thus, we must apply the rules of contract construction to resolve the ambiguity. It is well established that "a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless."[10] The heading of Paragraph 22 — "Compliance with OCGA § 36-60-13 Or Any Amendment Thereto" — may be rendered meaningless if the paragraph applies in all circumstances, even those in which the statute has not been triggered by a debt obligation on the part of the County.[11] "The law favors a construction that will uphold the contract as a whole, and

---

[7] (Punctuation omitted.) *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 820 (596 SE2d 197) (2004).

[8] (Punctuation omitted.) Id.

[9] *Tachdjian v. Phillips*, 256 Ga. App. 166, 169 (568 SE2d 64) (2002).

[10] (Punctuation omitted.) *Barrow County Airport Auth. v. Romanair, Inc.*, 254 Ga. App. 722, 725 (4) (563 SE2d 467) (2002).

[11] See *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 164 (1) (a) (640 SE2d 719) (2007) (looking to both paragraph heading and text to determine intent of parties).

the whole contract should be looked to in arriving at the construction of any part."[12] The Lease contains detailed provisions for termination in the event of a default; thus, Paragraph 22 does not provide the sole method by which the County may terminate the Lease. It is, therefore, plausible that Paragraph 22 was not intended to apply in all circumstances. And while parol evidence is admissible to explain ambiguities in a contract, we find little in the record addressing the negotiation of Paragraph 22 or the parties' intent for its application. Accordingly, "the question as to what was intended here is an issue of fact for the jury to resolve."[13]

(b) The County argues that even if Paragraph 22 is triggered only when OCGA § 36-60-13 applies to a debt obligation of the County, Paragraph 22 has been triggered in this instance because the County "may incur expenses to install noise abatement measures or other items associated with the lease." Based on the record before us, however, we do not find that the provisions of OCGA § 36-60-13 would apply to the Lease.[14]

2. Because of our holding in Division 1, we need not address Etowah Valley's remaining enumerations of error.

*Judgment reversed. Andrews and Bernes, JJ., concur.*

DECIDED OCTOBER 29, 2008 —
RECONSIDERATION DENIED NOVEMBER 17, 2008 — 

*Dominick & Van Sant, Matthew W. Dominick, George E. Butler II*, for appellant.

*Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans*, for appellee.

---

[12] (Punctuation omitted.) *Tachdjian*, supra at 170.

[13] Id. at 171.

[14] See *Bauerband*, supra; *Barkley*, supra.