## S08G1619. ROTHSCHILD II et al. v. COLUMBUS CONSOLIDATED GOVERNMENT et al.
(678 SE2d 76)

SEARS, Chief Justice.

We granted certiorari in this case to consider whether the Court of Appeals correctly held that the trial court used the proper standard when it required plaintiffs, in a suit seeking to challenge the use of Special Local Option Sales Tax ("SPLOST") funds, to establish their standing by first proving Columbus Consolidated Government acted ultra vires.[1] For the reasons that follow, we conclude the Court of Appeals erred.

In 1999, the Columbus Consolidated Government, the Muscogee County School District, and the Muscogee County Library Board ("the appellees") sought voter approval of a SPLOST to fund the building of a new public library. While informing voters about the project, the appellees circulated an architectural rendering that illustrated a park-like space behind the library and, at informational meetings, the appellees referred to the project as having "green space" and a "park." The SPLOST was approved by voters on November 2, 1999, with the stated purpose of "paying the costs, in part, of acquiring, constructing, and equipping a county library." A

---

[14] *Martin v. State*, 281 Ga. 778, 780-781 (642 SE2d 837) (2007).

[1] *Rothschild v. Columbus Consolidated Govt.*, 291 Ga. App. 531, 533-535 (662 SE2d 167) (2008).

park, however, was not constructed at the time the library was built. Subsequently, when the last of the SPLOST funds was designated to landscaping around the library building and to purchasing books, a park still had not been built. The appellants then filed a complaint for injunctive relief and for mandamus, contending that the appellees had promised to build a park as part of the project, that they impermissibly abandoned a SPLOST purpose by failing to build the promised park, and that the trial court should compel the appellees to spend the remaining SPLOST funds on a park.

The appellants moved for a temporary restraining order ("TRO") to prohibit the appellees from spending the last SPLOST funds until the trial court had ruled on the appellants' request for mandamus relief. At the hearing on the request for a TRO, the appellees moved to dismiss the complaint, contending that the appellants lacked standing because they could not show that the appellees had engaged in any ultra vires action. The trial court agreed, and, effectively resolving the merits of the appellants' action, ruled that the appellees had not promised to construct a park, had not abandoned a SPLOST purpose, and had acted within their authority in allocating the SPLOST funds. The Court of Appeals affirmed, ruling that, to have standing, the appellants had to prove that the appellees' actions were illegal and ultra vires and that they had failed to do so. In reaching the holding, the Court relied on a statement from *Arneson v. Bd. of Trustees &c. of Ga.* to the effect that the citizens' standing in that case was " 'dependent upon the correctness of their contention that the questioned actions are ultra vires.' "[2]

For the reasons that follow, we conclude that the trial court and the Court of Appeals improperly concluded that the appellants were attempting to enjoin the appellees from spending money on the ground their expenditure was ultra vires and that both courts erred by concluding that the appellants had to prove the merits of their case at the preliminary hearing to have standing to maintain the action.

The appellants' complaint does not allege that the appellees engaged in ultra vires action in planning to spend the remaining SPLOST funds on landscaping and library books. Instead, the complaint primarily sought mandamus relief on the ground the appellees were required by law to spend the SPLOST funds on the projects detailed in the SPLOST referendum, that a public park was promised as part of the referendum, and that the appellees thus were

---

[2] Id. at 534 (3) (quoting *Arneson v. Bd. of Trustees &c. of Ga.*, 257 Ga. 579, 580 (361 SE2d 805) (1987)).

required to use the remaining funds to build the promised park. The complaint secondarily sought injunctive relief, alleging that the only way to ensure the public purpose of building a park could be satisfied was to enjoin the appellees from spending the last of the SPLOST funds until the merits of the appellants' action could be resolved.

Cases in which citizens contend that public officials are misusing SPLOST funds traditionally come to this Court by way of mandamus petitions.[3] In these SPLOST cases, this Court has held that mandamus will issue when the petitioners show that the public officials have failed to comply with a clear legal duty or grossly abused their discretion, such as by abandoning a SPLOST purpose approved by voters when it remains feasible to complete the purpose.[4] None of these prior SPLOST cases required the plaintiffs to prove the merits of their claim that government officials were improperly abandoning a SPLOST purpose in order to establish standing.

With regard to standing to bring a mandamus action, we have followed the language of OCGA § 9-6-24, which provides that "[w]here the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that [the] plaintiff is interested in having the laws executed and the duty in question enforced." For example, in *Moseley v. Sentence Review Panel*,[5] we noted that "[t]he purpose of a writ of mandamus is 'to compel a due performance (of an official duty), if there is no other specific legal remedy for the legal rights,'" and that "OCGA § 9-6-24 confers standing to seek the writ in those cases wherein the defendant owes a public duty which the plaintiff, as a member of the public, is entitled to have enforced." Moreover, in *Stephens v. Moran*, we held that a citizen of the City of East Point had standing to bring a mandamus action to compel the city to enact an ordinance regulating the sale of alcohol after voters had approved a referendum to permit the sale and regulation of alcohol in the city.[6] We concluded that the plaintiff had standing because he was "'interested in having the laws executed and the duty in question enforced.'"[7] In the present case, the appellants alleged that the appellees failed to perform their public duty of completing the park that was allegedly promised to the

[3] *Hicks v. Khoury*, 283 Ga. 407, 409 (658 SE2d 616)(2008); *Johnstone v. Thompson*, 280 Ga. 611 (631 SE2d 650) (2006); *Haugen v. Henry County*, 277 Ga. 743 (594 SE2d 324) (2004); *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 636 (514 SE2d 11) (1999); *Dickey v. Storey*, 262 Ga. 452, 454 (423 SE2d 650) (1992).

[4] E.g., *Hicks*, 283 Ga. at 408-409; *Dickey*, 262 Ga. at 455-456.

[5] 280 Ga. 646, 646 (631 SE2d 704) (2006).

[6] 221 Ga. 4, 5 (142 SE2d 845) (1965). Accord *Thomas v. Ragsdale*, 188 Ga. 238 (3 SE2d 567) (1939).

[7] Id.

voters. Under the foregoing cases, these allegations are sufficient to establish standing and are identical to the claim on the merits.

The question is whether the trial court erred in holding a preliminary hearing at which it resolved the merits of the appellant's claim in order to determine standing. We conclude that it did err and that the Court of Appeals erred in affirming that decision. The error appears to stem from our decision in *Arneson* in which we held that the plaintiffs' standing was " 'dependent upon the correctness of their contention that the questioned actions are ultra vires.' "[8] In *Arneson*, however, the ultra vires question could be resolved as a matter of law from a review of the statutes on which the plaintiffs relied. In the present case, on the other hand, the issue whether the appellees promised to build a park as part of the library project is a fact-dependent issue.

When factual inquiries regarding the merits of a claim are necessary to resolve standing, we agree with a leading treatise that it is undesirable to resolve the issue pursuant to a preliminary hearing.[9] Wright & Miller uses as an example the Supreme Court case of *Havens Realty Corp. v. Coleman*.[10] *Coleman* involved a housing discrimination claim, and an issue on appeal was whether "testers" had standing to bring a discrimination claim. "Testers" are "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices."[11] Under the Fair Housing Act, "testers" had standing to sue if they were provided false housing information. The Supreme Court concluded that, based on allegations of false information in the complaint, one of the testers had standing. Wright & Miller states that, because the "testers'" claim on the merits was identical to standing under the Fair Housing Act, it would be improper to resolve the factual issue of whether the "tester" received false information at a preliminary hearing. We believe such a rule avoids confusion between consideration of a party's merits claim and the issue of standing. Accordingly, we conclude that trial courts should not preliminarily resolve factual disputes regarding the merits of a claim in order to resolve a standing issue. This does not mean, however, that parties who might lack standing will have the right to proceed to trial and bring the governmental conduct at issue to a prolonged stop. If standing can be determined without resorting to a hearing to resolve a factual issue

---

[8] *Rothschild*, 291 Ga. App. at 534 (quoting *Arneson*, 257 Ga. at 580).

[9] See 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3531.15, pp. 331-332.

[10] 455 U. S. 363 (102 SC 1114, 71 LE2d 214) (1982).

[11] Id. at 373 (III) (A).

that is identical with the claim on the merits, the plaintiff's action may be dismissed for lack of standing. In addition, the government may move to dismiss the complaint on the merits under OCGA § 9-11-12 or may move for summary judgment on the merits under OCGA § 9-11-56 and thus expedite a resolution of a plaintiff's claim.

For the foregoing reasons, we conclude the trial court erred by resolving the standing issue by a preliminary hearing on the issue of the merits of the appellants' claim and that the Court of Appeals erred in affirming the trial court's judgment.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 8, 2009.

*Waldrep, Mullin & Callahan, Joseph L. Waldrep, Joshua R. McKoon*, for appellants.

*Hatcher, Stubbs, Land, Hollis & Rothschild, Jorge Vega, Gregory S. Ellington, Page, Scrantom, Sprouse, Tucker & Ford, James C. Clark, Jr., Thomas F. Gristina, J. Gray Conger, District Attorney, Clifton C. Fay, Jaimie B. DeLoach, Assistant District Attorneys*, for appellees.