## A09A1113. ANTI-LANDFILL CORPORATION, INC. v. NORTH AMERICAN METAL COMPANY, LLC et al.
(683 SE2d 88)

DOYLE, Judge.

This case arises out of a contract between Ware County, Georgia and North American Metal Company, LLC ("NAMCO"), wherein NAMCO agreed to expand and operate an idle county landfill, which was supposed to result in revenue for the County. Anti-Landfill Corporation, Inc. ("ALCI"), a non-profit citizens group, filed suit against Ware County, the members of the Ware County Board of Commissioners ("the Board"), NAMCO, and the Waycross and Ware

County Development Authority and its individual members (collectively, "the defendants"), seeking damages and declaratory and injunctive relief to block NAMCO's continued expansion and operation of the landfill. Subsequently, NAMCO filed a motion for summary judgment, which the trial court granted in part and denied in part. ALCI appeals, and we affirm, for reasons that follow.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant.[2]

So viewed, the record shows that in 1989, Ware County voters approved a 1 percent special purpose local option sales tax ("SPLOST") "for roads, streets[,] and bridges and for acquisition [of], constructing[,] and equipping a landfill." At the time, it was anticipated that the proposed landfill in Ware County would serve the citizens of Ware, Bacon, and Pierce Counties.

On March 6, 1990, Ware County and the City of Waycross executed a "Landfill Agreement" stating that both the City and the County's existing landfills were at or near capacity. The agreement provided that Ware County would operate the landfill, which would serve the citizens of Ware, Bacon, and Pierce Counties, and the municipalities therein, "for disposal of trash and refuse."

On May 11, 1990, the counties of Ware, Bacon, and Pierce entered into the "Okeefenokee Agreement," in which they agreed that Ware County would own 62 percent of the landfill, Bacon County would own 16 percent, and Pierce County would own 22 percent. The Okeefenokee Agreement provided that the residents of the three counties and their municipalities would be permitted to use the landfill to dispose of their trash and refuse, and that Ware County would be "the operating entity."

On April 5, 1993, following a series of facilitated meetings to negotiate various issues regarding the landfill, as required by Georgia law,[3] the Board, the City of Waycross, and a group of concerned citizens (identified as the "Citizens Facilities Issues Committee") executed a Negotiated Agreement, which contained provisions for compensating adjacent landowners if their property was devalued. The agreement provided that Ware County would operate the landfill and that if any other entity was considered for involvement in the

---

[1] See *Etowah Valley Sporting Clay Park, LLC v. Dawson County*, 294 Ga. App. 586 (669 SE2d 436) (2008).

[2] See id.

[3] See OCGA § 12-8-32 (1992) (setting forth requirements for the opportunity for a facility issues negotiation process involving affected residents and landowners and the host local government for the proposed site of a regional solid waste disposal facility).

landfill, the County was required to conduct a public hearing in the same manner as for zoning considerations. The Negotiated Agreement also reflected that although the parties could not agree whether to impose a height restriction on the landfill, the engineer's plan reflected that the height would be "slightly over 50 feet." The agreement also provided for a 200-foot buffer zone and granted the citizens "reasonable access" to the landfill to determine the presence of hazardous waste. The Negotiated Agreement was thereafter approved by the Board via resolution, which specifically stated that Ware County accepted the agreement and "agree[d] to be bound by the terms contained therein." The City of Waycross also approved the Negotiated Agreement, stating in its resolution that the agreement "is not a legally binding contract."

The landfill was constructed and partially completed in the mid-1990s. On November 19, 1996, the Ware County Manager sent a letter to the Environmental Protection Division of the Department of Natural Resources ("EPD"), indicating that because of the economic environment in the area and the development of several private waste facilities, it was not "economically feasible" to operate the landfill (referred to therein as "the Tri-County Landfill") and requesting to delay the opening of the landfill. Thus, the permit previously issued by the EPD lapsed, and the landfill was not used from 1993 through 2004. Bacon County withdrew its participation in the Tri-County Landfill in 1994, and Pierce County similarly withdrew in 2004.

In 2004, NAMCO approached Ware County, offering to renovate and operate the landfill and share the revenues with the County, and in December 2004, NAMCO made a presentation to the Board regarding its proposition. Thereafter, the Board published a notice of a December 28, 2004 public hearing, stating therein that the hearing "is for the purpose of discussing a proposed agreement with a private company for lease and operation of the Tri-County Phase I Landfill facility . . . for the disposal of limited types of non-hazardous waste." According to the minutes for the December 28 public hearing, NAMCO spoke to the audience, and several citizens voiced opposition and/or concerns about the County's proposed agreement with NAMCO. The Board held a one-hour meeting the following day, December 29, at which the Board voted unanimously to sign the lease agreement with NAMCO. There was no notice published regarding the December 29 meeting, and the minutes from the December 28 hearing do not contain any mention of the hearing held the following day. The Board then executed the agreement on December 30, 2004.

New Board members took office thereafter, and on January 6, 2005, the new Board held a work session. The minutes from the

session state that the Board Chairman

> expressed a desire to revisit the landfill agreement and was not in favor of it. [A separate] Commissioner said that he thought the action would be taken when the new Board was in office. He said that the landfill is in District 4, which had no Commission representation in the decision. He felt like it was pushed through at the last minute.

At a subsequent work session held on February 10, 2005, one of the commissioners recommended terminating the NAMCO lease, and the Chairman agreed. At the next meeting, held February 21, 2005, the Chairman moved to rescind the lease agreement, but he withdrew the motion after the county attorney advised him that there could be possible legal ramifications to doing so.

In August 2006, the Board amended the NAMCO agreement to permit NAMCO to build a railroad to the landfill and to increase the capacity of the landfill from 570,000 tons to three million tons annually. On November 6, 2006, the Waycross and Ware County Development Board approved the issuance of $45 million in revenue bonds to fund the landfill.

On April 20, 2007, ALCI filed suit against the defendants, seeking damages and declaratory and injunctive relief to prevent NAMCO's operation of the landfill. NAMCO filed a motion for summary judgment, which the trial court granted in part, and this appeal followed.

1. In the complaint, ALCI alleged that the NAMCO lease agreement, the amendment thereto, and all resolutions connected therewith are void and ultra vires because the Board failed to provide the requisite 24 hours notice of the December 29, 2004 meeting of the Board of Commissioners at which the NAMCO lease agreement was authorized. The trial court granted summary judgment to the defendants on this claim, finding that ALCI's claims for lack of notice under the Georgia Open and Public Meetings law were untimely, and ALCI challenges this ruling on appeal. We find no error.

The Georgia Open and Public Meetings Act requires a county board to prescribe the time, place, and date of regular meetings and to hold the regular meetings in accordance with the prescribed schedule.[4] For any other meeting, a county board must give "due notice" to the public, defined as "the posting of a written notice for at least 24 hours at the place of regular meetings and giving of

---

[4] See OCGA § 50-14-1 (d).

written or oral notice at least 24 hours in advance of the meeting to the legal organ in which notices of sheriff's sales are published in the county where regular meetings are held. . . ."[5] OCGA § 50-14-1 (b) provides that "[a]ny . . . official action of an agency adopted, taken, or made at a meeting which is not open to the public as required by this chapter shall not be binding." The statute further provides, however, that "[a]ny action contesting a resolution, rule, regulation, ordinance, or other formal action of an agency based on an alleged violation of this provision must be commenced within 90 days of the date such contested action was taken."[6]

Here, ALCI, which filed the lawsuit on April 30, 2007, has not demonstrated that it asserted a challenge to the Board's actions based on the Georgia Open and Public Meetings Act within 90 days of the December 2004 and August 2006 Board of Commissioners' resolutions approving the NAMCO agreement or the Development Authority's November 2006 approval of revenue bonds for this project. Thus, the trial court did not err in granting summary judgment to the defendants as to ALCI's claims based on the Georgia Open and Public Meetings Act.[7]

2. ALCI alleges that the trial court erred in concluding that the defendants' actions did not violate the 1989 SPLOST referendum, which was passed for the purpose of establishing a landfill for the disposal of trash and refuse from Ware County and the City of Waycross. Specifically, ALCI argues that the defendants violated OCGA § 48-8-121 (a) (1), which states that SPLOST funds must be used "exclusively for the purpose or purposes specified in the resolution or ordinance calling for imposition of the tax."

As noted by the trial court, the government entity charged with allocating SPLOST funds "retains discretion to make decisions that fall within the authorization of a SPLOST referendum as long as alterations in its plans do not contravene the terms of the referendum or otherwise violate the law."[8] Here, the voters approved the use of SPLOST funds "for roads, streets[,] and bridges and for acquisition [of], constructing[,] and equipping a landfill." It is undisputed that SPLOST funds were used to construct the landfill, that the funds were exhausted by 1999, and that none of the 1989 SPLOST funds were spent under the NAMCO agreement. It is also uncontro-

---

[5] Id.

[6] OCGA § 50-14-1 (b).

[7] See id.; *Walker v. City of Warner Robins*, 262 Ga. 551, 552 (3) (422 SE2d 555) (1992).

[8] (Punctuation omitted.) *Rothschild v. Columbus Consolidated Govt.*, 291 Ga. App. 531, 534 (3) (662 SE2d 167) (2008), rev'd on other grounds, *Rothschild v. Columbus Consolidated Govt.*, 285 Ga. 477 (678 SE2d 76) (2009). See *Hicks v. Khoury*, 283 Ga. 407, 408 (1) (658 SE2d 616) (2008); *Johnstone v. Thompson*, 280 Ga. 611, 612 (631 SE2d 650) (2006).

verted that in 1996, Ware County determined that it was not "economically feasible" for the County to operate the landfill. Under these circumstances, we agree with the trial court's conclusion that the defendant did not abuse its discretion in altering the original landfill plan and that the NAMCO Agreement is not inconsistent with the terms of the purpose of the 1989 SPLOST.[9]

We note that ALCI also alleges that the NAMCO Agreement violates a particular section of the Ware County Code prohibiting the disposal of industrial and hazardous waste. But we are unable to review the merits of this argument because ALCI has not provided a record citation for the county ordinance.[10] It is axiomatic that neither the superior court not this Court can take judicial notice of county ordinances.[11]

> Although it is not the function of this Court to cull the record, we searched for a certified copy of the ordinance, or for any evidence that the ordinance was pled verbatim in [ALCI's] complaint and admitted in the . . . answer. We failed to find this or any other proof that the ordinance was proved by proper means below.[12]

Thus, because ALCI has failed to demonstrate that the relevant ordinance was properly proved below, we are unable to consider ALCI's argument based thereon.[13]

3. ALCI further argues that the trial court erred in concluding that the defendants' actions did not violate the 1993 Negotiated Agreement signed by Ware County, the City of Waycross, and the Citizens Facilities Issues Committee.

Here, the amendment to the 1993 Negotiated Agreement specifically provides that the parties "do not interpret or intend the Agreement [to be] a legally binding and enforceable contract." Moreover, the Negotiated Agreement was entered into after the facility issues negotiation process, which was required before application to the EPD for a regional waste disposal facility permit.[14] Here, the EPD permit for the landfill lapsed after Ware County determined that it was economically unfeasible for the County to

---

[9] See *Hicks*, 283 Ga. at 409 (1); *Thornton v. Clarke County School Dist.*, 270 Ga. 633, 636 (2) (514 SE2d 11) (1999).

[10] See *Prime Home Properties, LLC v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 700 (1) (660 SE2d 44) (2008).

[11] See *Leger v. Ken Edwards Enterprises*, 223 Ga. 536, 539 (2) (156 SE2d 651) (1967); *Prime Home Properties*, 290 Ga. App. at 700 (1).

[12] *Prime Home Properties*, 290 Ga. App. at 700 (1).

[13] See id. at 699-700 (1).

[14] See OCGA § 12-8-32.

operate the landfill. Under these circumstances, the trial court did not err in granting summary judgment to the defendants as to ALCI's claim that the defendants' actions violated the Negotiated Agreement.

4. In their final enumeration, ALCI argues that the trial court erred in concluding that the Waycross and Ware County Development Authority is authorized to issue bonds for the landfill project. Specifically, ALCI argues that issuance of the bonds violated several sections of the Ware County Code. But, as set forth in Division 2, supra, because ALCI has failed to show that the ordinances upon which they rely are properly before this Court, we cannot consider this enumeration.[15]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED AUGUST 4, 2009.

*Savage, Herndon & Turner, Christopher D. Britt, Chad R. Corlee*, for appellant.

*Akerman, Senterfitt, Wickwire & Gavin, Daniel J. Donohue, Hal J. Perloff*, for appellees.

---

[15] See *Prime Home Properties*, 290 Ga. App. at 699-700 (1).